**CANDIS MITCHELL**
California State Bar No. 242797
**FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
San Diego, California 92101-5008
(619) 234-8467 (tel); (619) 687-2666 (fax)
Candis_Mitchell@fd.org

Attorneys for Mr. Gabino Alberto Rodriguez-Lara

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE JEFFREY T. MILLER)**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Case No.   08cr0373-JM |
| ) | |
| Plaintiff, ) | |
| ) | STATEMENT OF FACTS AND |
| v. ) | MEMORANDUM OF POINTS AND |
| ) | AUTHORITIES IN SUPPORT OF MOTIONS |
| **GABINO ALBERTO RODRIGUEZ-LARA**, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**I.**

**BACKGROUND**[1]

On December 14, 2007, Mr. Rodriguez-Lara was attempting to enter the United States through the Calexico Port of Entry from Mexico. He allegedly informed the officers that he had nothing to declare, he had owned his vehicle, and he was coming into the United States to have dinner with his girlfriend. As a result of a narcotic detection dog alert while in secondary, the vehicle was inspected further and packages of marijuana that totaled 22.96 kg were found concealed within the trunk of the vehicle's spare tire well.

Mr. Rodriguez-Lara was subsequently read his <u>Miranda</u> rights -- which he did not waive.

---

[1] Unless otherwise stated, the "facts" referenced in these papers come from Government-produced documents that the defense continues to investigate. Mr. Rodriguez-Lara does not admit the accuracy of this information and reserves the right to challenge it at any time.

On January 10, 2008, Mr. Rodriguez-Lara waived indicted for intentional importation of 22.96 kg of marijuana in violation of 21 U.S.C. § 952 and 960 in case 08cr0067-JM. The case was dismissed and Mr. Rodriguez-Lara was subsequently indicted for intentional importation of 22.96 kg of marijuana in violation of 21 U.S.C. § 952 and 960, and possession with the intent to distribute in violation of 21 U.S.C. § 841.

These motions follow.

## II.

## THE INDICTMENT MUST BE DISMISSED BECAUSE THE DRUG STATUTES ARE FACIALLY UNCONSTITUTIONAL

"[I]t is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed." Apprendi v. New Jersey, 530 U.S. 466 (2000); United States v. Nordby, 225 F.3d 1053, 1057-58 (9th Cir. 2000). Clearly, in enacting 21 U.S.C. §§ 841, 952, and 960, Congress intended to do precisely what Apprendi forbids: it made the type and quantity of the controlled substance "a sentencing factor, not an element of the crime under [the statutes]; the statute[s are] not susceptible to a contrary interpretation." Nordby, 225 F.3d at 1058. Because there is no ambiguity, the doctrine of constitutional doubt does not apply. See Miller v. French, 530 U.S. 327, 120 S. Ct. 2246, 2255 (2000).

The statutes are not severable; they contain no default sentencing provisions. Subsection (a) of each provision cannot stand alone: they contain no penalty provisions. See Board of Natural Resources v. Brown, 992 F.2d 937, 948 (9th Cir. 1993) (asking "whether the [a]ct which remains after the unconstitutional provisions are excised is 'fully operative' . . . whether the unconstitutional provisions are 'functionally independent' from the remainder of the [a]ct").

Moreover, this Court may not attempt to uphold the constitutionality of the statutes by attempting to guess what penalties Congress would have imposed if it had known that §§ 841, 952, and 960 were unconstitutional. Indeed, even if it thinks that it may have a good idea of what Congress may have intended when it passed the constitutionally infirm legislation, this Court may not legislate penalties into a statute that lacks them to avoid finding the statute unconstitutional. See United States v. Evans, 333 U.S. 483, 486 (1948). There, the Supreme Court rejected the Government's request "to make [the statute] effective by applying . . . one of the possibilities which seems most nearly to accord with the criminal proscription and

the terms of the penalizing provision." Id. The Supreme Court refused to "plug the hole in the statute[,]" and concluded that "[t]his is a task outside the bounds of judicial interpretation. It is better for Congress, and more in accord with its function, to revise the statute than for us to guess at the revision it would make. That task it can do with precision. We could do no more than make speculation law." Id. at 495. If the Supreme Court would not redraft the relatively simple statute in Evans, this Court certainly should not redraft §§ 841, 952, and 960 to include penalty provisions.

The Ninth Circuit went to great lengths to join the other circuits and hold that § 841 (and by analogy §§ 952 and 960) does not violate due process. United States v. Buckland, 277 F.3d 1173 (9th Cir. 2002) (en banc). In substance, the Ninth Circuit stated that it and the other Courts of Appeals had erred in years of precedent that committed findings of type and quantity of controlled substance to the district court at sentencing or punishment. Buckland, at 1178, n.2 (citing the various federal circuit courts that had long held that Congress left findings as to type and quantity of controlled substance to the district court at sentencing). Ironically, the Buckland decision turns on what "[§] 841 ... does not say." Id., at 1179. In other words, the Buckland court construed § 841 (and by analogy would construe §§ 952 and 960) as constitutional because Congress "did not purposefully remove from the jury the assessment of the facts [necessary to] increase the prescribed range of penalties ...." Id. at 1181. (internal quotation marks and citation omitted). Yet, the Buckland court's conclusion ignores the plain language of § 841(b) (as well as that of § 960(a)), see supra, and the rules of statutory construction that it purports to follow. Buckland, at 1198 (Tashima, J. dissenting). The long awaited Buckland decision makes no sense.

The Government will no doubt argue that the Buckland decision binds this Court. Mr. Rodriguez-Lara urges this Court to reject the Buckland decision as an example of result oriented jurisprudence that disregards the definition of due process outlined by the Supreme Court in Apprendi. Apprendi announced a constitutional rule that binds this Court, and this Court must follow it.

### III.

**MOTION TO DISMISS THE INDICTMENT BECAUSE THE GRAND JURY WAS NOT ASKED TO FIND THAT MR. RODRIGUEZ-LARA *KNEW* THE TYPE AND QUANTITY OF NARCOTICS INVOLVED IN THIS OFFENSE**

If this Court reinterprets the type and quantity of controlled substance to be offense elements or the "functional equivalent" of offense elements that have to be alleged in the indictment, this Court must find

1  that the statute's *mens rea* is equally applicable to these new "elements." See United States v. X-Citement
2  Video, Inc., 513 U.S. 64 (1994); but see United States v. Carranza, 289 F.3d 634 (9th Cir. 2002). Not only
3  must the indictment allege the type and quantity of "controlled substance" involved in the offense, the
4  indictment must allege that the defendant knew the type and quantity involved. And, regardless of what this
5  Court considers the elements of his alleged offense, Mr. Rodriguez-Lara has a right to a grand jury
6  determination on each one. See United States v. Du Bo, 186 F.3d 1177, 1179 (9th Cir. 1999) ("The Fifth
7  Amendment ... requires that a defendant be convicted only on charges considered and found by a grand
8  jury."); see also id. (reversing because the Ninth Circuit could "only guess whether the grand jury received
9  evidence of, and actually passed on, Du Bo's intent.") (emphasis added). Assuming that this Court upholds
10 the constitutionality of section 841, the grand jury should have found that Mr. Rodriguez-Lara knew the type
11 and quantity of narcotics involved in this offense. Because the grand jury made no such finding, this Court
12 should dismiss the indictment. See Ex. A, Reporter's Partial Transcript of the Proceedings, dated January
13 11, 2007 (attached).

## IV.

## MOTION TO DISMISS THE INDICTMENT DUE TO A GRAND JURY VIOLATION

**A.    Introduction.**

The indictment in this case was returned by the January 2007 grand jury. United States District Court Judge Larry A. Burns voir dired and instructed the grand jury on January 11, 2007. See Ex. A, and Reporter's Transcript of Proceedings, dated January 11, 2007, attached as Exhibit B (voir dire). Judge Burns's instructions to the impaneled grand jury amount to structural error. First, Judge Burns' instructions erroneously constrains the power of the grand jury in violation of United States v. Williams, 504 U.S. 36, 49 (1992) and Vasquez v. Hillary, 474 U.S. 254 (1986). Second, Judge Burns's instructions conflict with Williams' holding that there is no duty to present exculpatory evidence to the grand jury, leaving the grand jury with the erroneous impression that all evidence undercutting probable cause will be presented to them, making it unnecessary for the grand jury to conduct any independent investigation of their own.

**B.    *Navarro-Vargas* Establishes Limits on the Ability of Judges to Constrain the Powers of the Grand Jury, Which Judge Burns Far Exceeded in His Instructions as a Whole During Impanelment.**

The Ninth Circuit has, over vigorous dissents, rejected challenges to various instructions given to

grand jurors in the Southern District of California. See Navarro-Vargas II, 408 F.3d 1184. While the Ninth Circuit has thus far narrowly rejected such challenges, it has, in the course of adopting a highly formalistic approach[2] to the problems posed by the instructions, endorsed many of the substantive arguments raised by the defendants in those cases. The district court's instructions in this case cannot be reconciled with the role of the grand jury as set forth in Navarro-Vargas II. Taken together, the voir dire of and instructions given to the January 2007 Grand Jury, go far beyond those at issue in Navarro-Vargas, taking a giant leap in the direction of a bureaucratic, deferential grand jury, focused solely upon probable cause determinations and utterly unable to exercise any quasi-prosecutorial discretion. That is not the institution the Framers envisioned. See Williams, 504 U.S. at 49.

Significantly, with respect to the grand jury's relationship with the prosecution, the Navarro-Vargas II majority acknowledges that the two institutions perform similar functions: "'the public prosecutor, in deciding whether a particular prosecution shall be instituted or followed up, performs much the same function as a grand jury.'" Navarro-Vargas II, 408 F.3d at 1200 (quoting Butz v. Economou, 438 U.S. 478, 510 (1978)). Accord United States v. Navarro-Vargas, 367 F.3d 896, 900 (9th Cir. 2004) (Navarro-Vargas I) (Kozinski, J., dissenting) (The grand jury's discretion in this regard "is most accurately described as prosecutorial."). See also Navarro-Vargas II, 408 F.3d at 1213 (Hawkins, J., dissenting). It recognizes that the prosecutor is not obligated to proceed on any indictment or presentment returned by a grand jury, id., but also that "the grand jury has no obligation to prepare a presentment or to return an indictment drafted by the prosecutor." Id. See Niki Kuckes, The Democratic Prosecutor: Explaining the Constitutional Function of the Federal Grand Jury, 94 Geo. L.J. 1265, 1302 (2006) (the grand jury's discretion not to indict was "'arguably . . . the most important attribute of grand jury review from the perspective of those who insisted that a grand jury clause be included in the Bill of Rights'") (quoting Wayne LaFave et al., Criminal Procedure § 15.2(g) (2d ed. 1999)).

Indeed, the Navarro-Vargas II majority agrees that the grand jury possesses all the attributes set forth

---

2   See Navarro-Vargas II, 408 F.3d at 1210-11 (Hawkins, J., dissenting) (criticizing the majority because "[t]he instruction's use of the word 'should' is most likely to be understood as imposing an inflexible 'duty or obligation' on grand jurors, and thus to circumscribe the grand jury's constitutional independence.").

in Vasquez, 474 U.S. 254. See id.

> The grand jury thus determines not only whether probable cause exists, but also whether to "charge a greater offense or a lesser offense; numerous counts or a single count; and perhaps most significant of all, a capital offense or a non-capital offense—all on the basis of the same facts. And, significantly, the grand jury may refuse to return an indictment even "'where a conviction can be obtained.'"

Id. (quoting Vasquez, 474 U.S. at 263).

The Supreme Court has itself reaffirmed Vasquez's description of the grand jury's attributes in Campbell v. Louisiana, 523 U.S. 392 (1998), noting that the grand jury "controls not only the initial decision to indict, but also significant questions such as how many counts to charge and whether to charge a greater or lesser offense, including the important decision whether to charge a capital crime." Id. at 399 (citing Vasquez, 474 U.S. at 263). Judge Hawkins notes that the Navarro-Vargas II majority accepts the major premise of Vasquez: "the majority agrees that a grand jury has the power to refuse to indict someone even when the prosecutor has established probable cause that this individual has committed a crime." See id. at 1214 (Hawkins, J. dissenting). Accord Navarro-Vargas I, 367 F.3d at 899 (Kozinski, J., dissenting); United States v. Marcucci, 299 F.3d 1156, 1166-73 (9th Cir. 2002) (per curiam) (Hawkins, J., dissenting). In short, the grand jurors' prerogative not to indict enjoys strong support in the Ninth Circuit. But not in Judge Burns's instructions.

The Navarro-Vargas II majority found that the instruction in that case "leave[s] room for the grand jury to dismiss even if it finds probable cause," 408 F.3d at 1205, adopting the analysis in its previous decision in Marcucci. Marcucci reasoned that the instructions do not mandate that grand jurors indict upon every finding of probable cause because the term "should" may mean "what is probable or expected." 299 F.3d at 1164 (citation omitted). That reading of the term "should" makes no sense in context, as Judge Hawkins ably pointed out. See Navarro-Vargas II, 408 F.3d at 1210-11 (Hawkins, J., dissenting) ("The instruction's use of the word 'should' is most likely to be understood as imposing an inflexible 'duty or obligation' on grand jurors, and thus to circumscribe the grand jury's constitutional independence."). See also id. ("The 'word' should is used to express a duty [or] obligation.") (quoting The Oxford American Diction and Language Guide 1579 (1999) (brackets in original)).

The debate about what the word "should" means is irrelevant here; the instructions here make no such fine distinction. Judge Burns's grand jury instructions make it painfully clear that grand jurors simply

may not choose not to indict in the event of what appears to them to be an unfair application of the law: should "you disagree with that judgment made by Congress, then your option is not to say 'well, I'm going to vote against indicting even though I think that the evidence is sufficient'...." See Ex. A at 8-9. Thus, the instruction flatly bars the grand jury from declining to indict because they disagree with a proposed prosecution. No grand juror would read this language as instructing, or even allowing, him or his to assess "the need to indict." Vasquez, 474 U.S. at 264.

While Judge Burns used the word "should" instead of "shall" during voir dire with respect to whether an indictment was required if probable cause existed, see Ex. A at 4, 8, in context, it is clear that he could only mean "should" in the obligatory sense. For example, when addressing a prospective juror, Judge Burns not only told the jurors that they "should" indict if there is probable cause, he told them that if there is not probable cause, "then the grand jury should hesitate and not indict." See id. at 8. At least in context, it would strain credulity to suggest that Judge Burns was using "should" for the purpose of "leaving room for the grand jury to [indict] even if it finds [no] probable cause." See Navarro-Vargas, 408 F.3d at 1205. Clearly he was not.

The full passage cited above effectively eliminates any possibility that Judge Burns intended the Navarro-Vargas spin on the word "should."

> [T]he grand jury is determining really two factors: "do we have a reasonable belief that a crime was committed? And second, do we have a reasonable belief that the person that they propose that we indict committed the crime?"
>
> If the answer is "yes" to both of those, then the case should move forward. If the answer to either of the questions is "no," then the grand jury should not hesitate and not indict.

See Ex. B at 8. Of the two sentences containing the word "should," the latter of the two essentially states that if there is no probable cause, you *should* not indict. Judge Burns could not possibly have intended to "leav[e] room for the grand jury to [indict] even if it finds [no] probable cause." See Navarro-Vargas, 408 F.3d at 1205 (citing Marcucci, 299 F.3d at 1159). That would contravene the grand jury's historic role of protecting the innocent. See, e.g., United States v. Calandra, 414 U.S. 338, 343 (1974) (The grand jury's "responsibilities continue to include both the determination whether there is probable cause and the protection of citizens against unfounded criminal prosecutions.") (citation omitted).

By the same token, if Judge Burns said that "the case should move forward" if there is probable

cause, but intended to "leav[e] room for the grand jury to dismiss even if it finds probable cause," see Navarro-Vargas, 408 F.3d at 1205 (citing Marcucci, 299 F.3d at 1159), then he would have to have intended two different meanings of the word "should" in the space of two consecutive sentences. That could not have been his intent. But even if it were, no grand jury could ever have had that understanding.[3] Jurors are not presumed to be capable of sorting through internally contradictory instructions. See generally United States v. Lewis, 67 F.3d 225, 234 (9th Cir. 1995) ("where two instructions conflict, a reviewing court cannot presume that the jury followed the correct one") (citation, internal quotations and brackets omitted).

Lest there be any room for ambiguity, on no less than four occasions, Judge Burns made it explicitly clear to the grand jurors that "should" was not merely suggestive, but obligatory, on multiple occasions:

The first occasion occurred in the following exchange when Judge Burns conducted voir dire and excused a potential juror (CSW):

> The Court: . . . If there's probable cause, then the case should go forward. I wouldn't want you to say, "Well, yeah, there's probable cause. But I still don't like what the government is doing. I disagree with these laws, so I'm not going to vote for it to go forward." If that's your frame of mind, then probably you shouldn't serve. Only you can tell me that.
> Prospective Juror: Well, I think I may fall in that category.
> The Court: In the latter category?
> Prospective Juror: Yes.
> The Court: Where it would be difficult for you to support a charge even if you thought the evidence warranted it?
> Prospective Juror: Yes.
>
> The Court: I'm going to excuse you then.

See Ex. B at 17. There was nothing ambiguous about the word "should" in this exchange with a prospective juror. Even if the prospective juror did not like what the government was doing in a particular case, that case "should go forward" and Judge Burns expressly disapproved of any vote that might prevent that. See id. ("I wouldn't want you [to vote against such a case]"). The sanction for the possibility of independent judgment was dismissal, a result that provided full deterrence of that juror's discretion and secondary deterrence as to the exercise of discretion by any other prospective grand juror.

On another occasion, in an even more explicit example of what "should" meant, Judge Burns makes

---

[3] This argument does not turn on Mr. Rodriguez-Lara's view that the Navarro-Vargas/Marcucci reading of the word "should" in the model instructions is wildly implausible. Rather, it turns on the context in which the word is employed by Judge Burns in his unique instructions, context which eliminates the Navarro-Vargas/Marcucci reading as a possibility.

clear that it there is an unbending obligation to indict if there is probable cause. Grand jurors have no other prerogative.

> Court . . . It's not for me to say, "Well, I don't like it. So I'm not going to follow it here." You'd have a similar *obligation* as a grand juror even though you might have to grit your teeth on some cases. Philosophically, if you were a member of Congress, you'd vote against, for example, criminalizing marijuana. I don't know if that's it, but you'd vote against criminalizing some drugs.
>
> That's not what your *prerogative* is here. Your prerogative instead is act like a judge and to say, "All right. This is what I've got to deal with objectively. Does it seem to me that a crime was committed? Yes. Does it seem to me that this person's involved? It does." *And then your obligation, if you find those things to be true, would be to vote in favor of the case going forward*.

Id. at 26-27 (emphasis added). After telling this potential juror (REA) what his obligations and prerogatives were, the Court inquired as to whether "you'd be inclined to let people go on drug cases even though you were convinced there was probable cause they committed a drug offense?" Id. at 27. The potential juror responded: "It would depend on the case." Id. Nevertheless, that juror was excused. Id. at 28. Again, in this context, and contrary to the situation in Navarro-Vargas, "should" means "shall"; it is obligatory, and the juror has no prerogative to do anything other than indict if there is probable cause.

Moreover, as this example demonstrates, the issue is not limited to whether the grand jury believes a particular law to be "unwise." This juror said that any decision to indict would not depend on the law, but rather it would "depend on the case." Thus, it is clear that Judge Burns's point was that if a juror could not indict on probable cause for *every* case, then that juror was not fit for service. It is equally clear that the prospective juror did not dispute the "wisdom of the law;" he was prepared to indict under some factual scenarios, perhaps many. But Judge Burns did not pursue the question of what factual scenarios troubled the prospective jurors, because his message is that there is no discretion not to indict.

As if the preceding examples were not enough, Judge Burns continued to pound home the point that "should" meant "shall" when he told another grand juror during voir dire: "[W]hat I have to insist on is that you follow the law that's given to us by the United States Congress. We enforce the federal laws here." See id. at 61.

And then again, after swearing in all the grand jurors who had already agreed to indict in every case where there was probable cause, Judge Burns reiterated that "should" means "shall" when he reminded them

that "your option is not to say 'well, I'm going to vote against indicting even though I think that the evidence is sufficient . . . . Instead your *obligation* is . . . not to bring your personal definition of what the law ought to be and try to impose that through applying it in a grand jury setting." See Ex. A at 9.

Moreover, Judge Burns advised the grand jurors that the were forbidden from considering the penalties to which indicted persons may be subject.

> Prospective Juror (REA): ... And as far as being fair, it kind of depends on what the case is about because there is a disparity between state and federal law.
> The Court: In what regard?
> Prospective Juror: Specifically, medical marijuana.
> The Court: Well, those things -- the consequences of your determination shouldn't concern you in the sense that penalties or punishment, things like that -- *we tell trial jurors, of course, that they cannot consider the punishment or the consequence that Congress has set for these things. We'd ask you to also abide by that.* We want you to make a business-like decision of whether there was a probable cause. ...

See Ex. B at 24-25 (emphasis added). A "business-like decision of whether there was a probable cause" would obviously leave no role for the consideration of penalty information.

The Ninth Circuit previously rejected a claim based upon the proscription against consideration of penalty information based upon the same unlikely reading of the word "should" employed in Marcucci. See United States v. Cortez-Rivera, 454 F.3d 1038, 1040-41 (9th Cir. 2006). Cortez-Rivera is inapposite for two reasons. First, Judge Burns did not use the term "should" in the passage quoted above. Second, that context, as well as his consistent use of a mandatory meaning in employing the term, eliminate the ambiguity (if there ever was any) relied upon by Cortez-Rivera. The instructions again violate Vasquez, which plainly authorized consideration of penalty information. See 474 U.S. at 263.

Noting can mask the undeniable fact that Judge Burns explicitly instructed the jurors time and time again that they had a duty, an obligation, and a singular prerogative to indict each and every case where there was probable cause. These instructions go far beyond the holding of Navarro-Vargas and stand in direct contradiction of the Supreme Court's decision in Vasquez. Indeed, it defies credulity to suggest that a grand juror hearing these instructions, and that voir dire, could possibly believe what the Supreme Court held in Vasquez:

> The grand jury does not determine only that probable cause exists to believe that a defendant committed a crime, or that it does not. In the hands of the grand jury lies the power to charge a greater offense or a lesser offense; numerous counts or a single count; and perhaps most significant of all, a capital offense or a non-capital offense – all on the basis of the same facts. Moreover, "[t]he grand jury is not bound to indict in every case where a conviction

can be obtained."

474 U.S. at 263 (quoting United States v. Ciambrone, 601 F.2d 616, 629 (2nd Cir. 1979) (Friendly, J., dissenting)); accord Campbell v. Louisiana, 523 U.S. 392, 399 (1998) (The grand jury "controls not only the initial decision to indict, but also significant decisions such as how many counts to charge and whether to charge a greater or lesser offense, including the important decision whether to charge a capital crime."). Nor would the January 2007 grand jury ever believe that it was empowered to assess the "the need to indict." See id. at 264. Judge Burns's grand jury is not Vasquez's grand jury. The instructions therefore represent structural constitutional error "that interferes with the grand jury's independence and the integrity of the grand jury proceeding." See United States v. Isgro, 974 F.2d 1091, 1094 (9th Cir. 1992). Thus, the indictment must be dismissed. Id.

The Navarro-Vargas II majority's faith in the structure of the grand jury *is not* a cure for the instructions' excesses. The Navarro-Vargas II majority attributes "[t]he grand jury's discretion—its independence—[to] the absolute secrecy of its deliberations and vote and the unreviewability of its decisions." 408 F.3d at 1200. As a result, the majority discounts the effect that a judge's instructions may have on a grand jury because "it is the *structure* of the grand jury process and its *function* that make it independent." Id. at 1202 (emphases in the original).

Judge Hawkins sharply criticized this approach. The majority, he explains, "believes that the 'structure' and 'function' of the grand jury—particularly the secrecy of the proceedings and unreviewability of many of its decisions—sufficiently protects that power." See id. at 1214 (Hawkins, J., dissenting). The flaw in the majority's analysis is that "[i]nstructing a grand jury that it lacks power to do anything beyond making a probable cause determination ... unconstitutionally undermines the very structural protections that the majority believes save[] the instruction." Id. After all, it is an "'almost invariable assumption of the law that jurors follow their instructions.'" Id. (quoting Richardson v. Marsh, 481 U.S. 200, 206 (1987)). If that "invariable assumption" were to hold true, then the grand jurors could not possibly fulfill the role described in Vasquez. Indeed, "there is something supremely cynical about saying that it is fine to give jurors erroneous instructions because nothing will happen if they disobey them." Id.

In setting forth Judge Hawkins' views, Mr. Rodriguez-Lara understands that this Court may not adopt them solely because the reasoning that supports them is so much more persuasive than the majority's

sophistry. Rather, he sets them forth to urge the Court *not to extend* what is already untenable reasoning.

Here, again, the question is not an obscure interpretation of the word "should", especially in light of the instructions and commentary by Judge Burns during voir dire discussed above—unaccounted for by the Court in Navarro-Vargas II because they had not yet been disclosed to the defense, but an absolute ban on the right to refuse to indict that directly conflicts with the recognition of that right in Vasquez, Campbell, and both Navarro-Vargas II opinions. Navarro-Vargas II is distinguishable on that basis, but not only that.

Judge Burns did not limit himself to denying the grand jurors the power that Vasquez plainly states they enjoy. He also excused prospective grand jurors who might have exercised that Fifth Amendment prerogative, excusing "three [jurors] in this case, because they could not adhere to [that] principle...." See Ex. A at 8; Ex. B at 17, 28. The structure of the grand jury and the secrecy of its deliberations cannot embolden grand jurors who are no longer there, likely because they expressed their willingness to act as the conscience of the community. See Navarro-Vargas II, 408 F.3d at 1210-11 (Hawkins, J., dissenting) (a grand jury exercising its powers under Vasquez "serves ... to protect the accused from the other branches of government by acting as the 'conscience of the community.'") (quoting Gaither v. United States, 413 F.2d 1061, 1066 & n.6 (D.C. Cir. 1969)). The federal courts possess only "very limited" power "to fashion, on their own initiative, rules of grand jury procedure," United States v. Williams, 504 U.S. 36, 50 (1992), and, here, Judge Burns has both fashioned his own rules and enforced them.

**C.   The Instructions Conflict with *Williams*' Holding That There Is No Duty to Present Exculpatory Evidence to the Grand Jury.**

In Williams, the defendant, although conceding that it was not required by the Fifth Amendment, argued that the federal courts should exercise their supervisory power to order prosecutors to disclose exculpatory evidence to grand jurors, or, perhaps, to find such disclosure required by Fifth Amendment common law. See 504 U.S. at 45, 51. Williams held that "as a general matter at least, no such 'supervisory' judicial authority exists." See id. at 47. Indeed, although the supervisory power may provide the authority "to dismiss an indictment because of misconduct before the grand jury, at least where that misconduct amounts to a violation of one of those 'few, clear rules which were carefully drafted and approved by this Court and by Congress to ensure the integrity of the grand jury's functions,'" id. at 46 (citation omitted), it does not serve as "a means of *prescribing* such standards of prosecutorial conduct in the first instance." Id.

at 47 (emphasis added).  The federal courts possess only "very limited" power "to fashion, on their own initiative, rules of grand jury procedure." Id. at 50.  As a consequence, Williams rejected the defendant's claim, both as an exercise of supervisory power and as Fifth Amendment common law.  See id. at 51-55.

Despite the holding in Williams, the instructions here assure the grand jurors that prosecutors would present to them evidence that tended to undercut probable cause.  See Ex. A at 20.

> Now, again, this emphasizes the difference between the function of the grand jury and the trial jury.  You're all about probable cause.  If you think that there's evidence out there that might cause you say "well, I don't think probable cause exists," then it's incumbent upon you to hear that evidence as well.  As I told you, in most instances, *the U.S. Attorneys are duty-bound to present evidence that cuts against what they may be asking you to do if they're aware of that evidence*.

Id. (emphasis added). Moreover, Judge Burns later returned to the notion of the prosecutors and their duties, advising the grand jurors that they "can expect that the U.S. Attorneys that will appear in from of [them] will be candid, they'll be honest, and ... they'll act in good faith in all matters presented to you." See id. at 27. The Ninth Circuit has already concluded it is likely this final comment is "unnecessary." See Navarro-Vargas, 408 F.3d at 1207.

This particular instruction has a devastating effect on the grand jury's protective powers, particularly if it is not true.  It begins by emphasizing the message that Navarro-Vargas II somehow concluded was not conveyed by the previous instruction: "You're all about probable cause." See Ex. A at 20.  Thus, once again, the grand jury is reminded that they are limited to probable cause determinations (a reminder that was probably unnecessary in light of the fact that Judge Burns had already told the grand jurors that they likely would be excused if they rejected this limitation).  The instruction goes on to tell the grand jurors that they should consider evidence that undercuts probable cause, but also advises the grand jurors that the prosecutor will present it.  The end result, then, is that grand jurors should consider evidence that goes against probable cause, but, if none is presented by the government, they can  presume that there is none.  After all, "in most instances, the U.S. Attorneys are duty-bound to present evidence that cuts against what they may be asking you to do if they're aware of that evidence." See id.  Moreover, during voir dire, Judge Burns informed the jurors that "my experience is that the prosecutors don't play hide-the-ball.  If there's something adverse or that cuts against the charge, you'll be informed of that. *They have a duty to do that*." See Ex. B at 14-15 (emphasis added).  Thus, if the exculpatory evidence existed, it necessarily would have been presented by

the "duty-bound" prosecutor, because the grand jurors "can expect that the U.S. Attorneys that will appear in from of [them] will be candid, they'll be honest, and ... they'll act in good faith in all matters presented to you." See Ex. A at 27.

These instructions create a presumption that, in cases where the prosecutor does not present exculpatory evidence, no exculpatory evidence exists. A grand juror's reasoning, in a case in which no exculpatory evidence was presented, would proceed along these lines:

(1)   I have to consider evidence that undercuts probable cause.

(2)   The candid, honest, duty-bound prosecutor would, in good faith, have presented any such evidence to me, if it existed.

(3)   Because no such evidence was presented to me, I may conclude that there is none.

Even if some exculpatory evidence were presented, a grand juror would necessarily presume that the evidence presented represents the universe of all available exculpatory evidence; if there was more, the duty-bound prosecutor would have presented it.

The instructions, therefore, discourage investigation—if exculpatory evidence were out there, the prosecutor would present it, so investigation is a waste of time—and provide additional support to every probable cause determination: i.e., this case may be weak, but I know that there is nothing on the other side of the equation because it was not presented. A grand jury so badly misguided is no grand jury at all under the Fifth Amendment.

This is particularly troubling in this case, because government-produced discovery makes clear that the prosecutors in this case had ample exculpatory evidence at their disposal by the time the grand jury met to pass on Mr. Rodriguez-Lara's indictment. Mr. Rodriguez-Lara denied knowledge of the marijuana in the face of skilled and aggressive interrogation. Given Judge Burns's instructions, if the prosecutors in Mr. Rodriguez-Lara's case did not in fact present exculpatory evidence, the grand jury would have been misled into believing that there was no exculpatory evidence, because the prosecutor would not—as Judge Burns put it—"play hide the ball." See Ex. B at 14-15. Thus, in this case, unless the prosecutor presented the exculpatory evidence available to him, including the evidence of Mr. Rodriguez-Lara's repeated denials, the grand jury was fatally misled.

Unless the prosecutor concedes that the grand jury was not, in fact, presented with exculpatory

evidence in the prosecutor's possession (in which case, the indictment should be dismissed), Mr. Rodriguez-Lara moves for production of Mr. Rodriguez-Lara's grand jury proceeding so that this issue can be resolved on the full evidence.

## V.
## CONCLUSION

For the foregoing reasons, Mr. Rodriguez-Lara respectfully requests that the Court grant the above motions.

Respectfully submitted,

Dated:  March 14, 2008

*s/ Candis Mitchell*
**CANDIS MITCHELL**
Federal Defenders of San Diego, Inc.
Attorneys for Mr. Rodriguez-Lara
Candis_Mitchell@fd.org