KAREN P. HEWITT
United States Attorney
LAWRENCE A. CASPER
Assistant U.S. Attorney
California Bar No. 235110
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-7455/(619) 235-2757 (Fax)
Email: Lawrence.Casper@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,  Plaintiff,  v.  GABINO ALBERTO RODRIGUEZ-LARA,  Defendant. | Criminal Case No. 08CR0373-JM  DATE: March 28, 2008  TIME: 11:00 a.m.  GOVERNMENT'S RESPONSE AND OPPOSITION TO DEFENDANT'S MOTIONS TO:  (1) DISMISS INDICTMENT DUE TO UNCONSTITUTIONAL STATUTE;  (2) DISMISS INDICTMENT FOR FAILURE TO ALLEGE AMOUNT AND TYPE OF DRUGS;  (3) DISMISS INDICTMENT DUE TO IMPROPER GRAND JURY INSTRUCTIONS  TOGETHER WITH STATEMENT OF FACTS AND MEMORANDUM OF POINTS AND AUTHORITIES |

COMES NOW, the plaintiff, the UNITED STATES OF AMERICA, by and through its counsel, KAREN P. HEWITT, United States Attorney, and Lawrence A. Casper, Assistant United States Attorney, and hereby files its Response and Opposition to the defendant's above-referenced motions together with Statement of Facts and Memorandum of Points and Authorities. This Response and Opposition is based upon the files and records of the case.

//

//

# I.

## STATEMENT OF THE CASE

A federal grand jury on February 13, 2008 returned a two-count Indictment charging Defendant Gabino Alberto Rodriguez-Lara with: (1) importing approximately 22.96 kilograms (approximately 50.51 pounds) of marijuana, in violation of 21 U.S.C. §§ 952 and 960, and (2) possessing with intent to distribute that same amount of marijuana, in violation of 21 U.S.C. § 841(a)(1). Defendant was arraigned on February 29, 2008 and entered a not guilty plea in this case.

# II.

## STATEMENT OF FACTS

**A.    Defendants' Apprehension**

**1.    Primary Inspection: Defendant's Nervousness & Lookout For Non-Factory Compartment**

On December 14, 2007, at approximately 4:17 p.m., Defendant Gabino Alberto Rodriguez-Lara (Defendant) was the driver and sole occupant of a maroon 1994 Ford Escort bearing California license plates (BCN9638) that attempted to cross into the United States from Mexico at the Calexico West Port of Entry.

Customs and Border Protection Officer Carmen Estrada was assigned to primary lane number four when Defendant approached. Defendant identified himself with a Border Crossing Card. CBPO Estrada observed the Defendant drop his card and witnessed the Defendant's hands shaking as he picked the card up to hand to the Officer. Defendant provided a negative customs declaration and CBPO Estrada inquired about the vehicle and the Defendant's destination. Defendant claimed that he had purchased the vehicle approximately three months earlier but that he had not yet registered the vehicle in his name. Defendant claimed he was on his way to Calexico to visit his girlfriend. During primary inspection, CBPO Estrada noticed that Defendant failed to make eye contact while responded to questions and maintained his hands on his knees with a hard grip throughout the questioning. A Treasury Enforcement Communications System (TECS) query of Defendant's name resulted in an active lookout due to a non-factory compartment found in a vehicle registered to the Defendant. CBPO Estrada referred Defendant and his vehicle for secondary inspection.

**2.  Secondary Inspection: Defendant's Nervousness & Discovery of Marijuana**

CBPO Miguel Cardenas assumed responsibility for the inspection in the secondary lot. Defendant provided a negative customs declaration and told the CBPO that he was late for a dinner date with his girlfriend in Calexico, California. CBPO Cardenas questioned Defendant about the vehicle and Defendant claimed he had owned the vehicle for three months but had not registered the vehicle in his name. CBPO Cardenas observed that Defendant's hands were shaking and were constantly grabbing his knees. During their conversation, Customs and Border Protection Canine Enforcement Officer (CEO) Scott Parrish was conducting a lot sweep with his narcotic detector dog; the dog alerted to the trunk area of this vehicle. CEO Parrish informed CBPO Cardenas of the alert.

CBPO continued his examination of the vehicle and discovered two packages concealed within the spare tire wheel well located in the green trunk area of the vehicle. CBPO Cardenas probed a package, exposing a green leafy substance which field tested positive for marijuana. A total of two packages with a net weight of 22.96 kilograms (50.51 pounds) were removed from the vehicle.

Immigration and Customs Enforcement (ICE) Special Agents Lorena Mulvihill and Chad Worgen responded to the apprehension of the Defendant. At approximately 7:18 p.m. Defendant was read his Miranda rights and invoked.

**B.  Criminal History of Defendant**

The Defendant has no known criminal convictions.

## III.

## DEFENDANT'S MOTIONS

**A.  The Drug Statutes Are Constitutional**

Defendant contends that the drug statutes are unconstitutional despite Ninth Circuit authority to the contrary. See, United States v. Buckland, 289 F.3d 558, 562 (9th Cir. 2002) (en banc); United States v. Mendoza-Paz, 286 F.3d 1104, 1109-10 (9th Cir. 2002).

The Ninth Circuit has already squarely and repeatedly rejected the claim that Apprendi rendered the federal drug laws facially unconstitutional. See, e.g., United States v. Jimenez, 300 F.3d 1166 (9th Cir. 2002); United States v. Marcucci, 299 F.3d 1156 (9th Cir. 2002); United States v. Carranza, 289 F.3d 634, 643 (9th Cir. 2002); United States v. Buckland, 289 F.3d 558, 562 (9th Cir. 2002) (en banc);

3

1  United States v. Mendoza-Paz, 286 F.3d 1104, 1109-10 (9th Cir. 2002); United States v. Varela-Rivera,
2  279 F.3d 1174, 1175 n.1 (9th Cir. 2002). See also Varela-Rivera, 279 F.3d at 1175 n.1 (recognizing that
3  Buckland foreclosed the argument that 21 U.S.C. §§ 841, 952 and 960 are unconstitutional).

4  Sections 841, 952 and 960 do not specify who shall determine drug type and amount, or what
5  burden of proof is required. As a result, two constructions of these statutes are possible; one which
6  construes drug type and amount as determinations to be made by the sentencing judge by a
7  preponderance of the evidence (a construction that poses constitutional problems under Apprendi), and
8  an alternative construction under which drug type and amount are findings to be made by the jury
9  beyond a reasonable doubt (a constitutionally valid construction).

10  Faced with these two competing interpretations, and in the absence of clear congressional intent,
11  the Ninth Circuit employed the constitutional avoidance doctrine. Under that doctrine, every reasonable
12  construction must be indulged in order to save a statute from unconstitutionality. Buckland, 289 F.3d
13  at 564. Thus, where an otherwise acceptable construction of a statute would raise "serious constitutional
14  problems," and where an alternative interpretation of the statute is "fairly possible," courts are obligated
15  to construe the statute to avoid such problems. Id. Because it is "fairly possible" to interpret drug type
16  and quantity as determinations required to be made by the jury, and because that interpretation is
17  constitutionally valid, the Ninth Circuit has interpreted 21 U.S.C. § 841 and its "structurally identical"
18  counterpart, 21 U.S.C. § 960, as requiring the jury to determine drug type and quantity beyond a
19  reasonable doubt. Buckland, 289 F.3d 567-68; Mendoza-Paz, 286 F.3d at 1110.

20  **B.     The Indictment Need Not Allege Knowledge Of Drug Type & Quantity**

21  Notwithstanding the fact that, in this case, the drug quantity and drug type are specifically
22  pleaded in both counts of the indictment, Defendant claims that the drug type and quantity are elements
23  of 21 U.S.C. §§ 841, 952, 960 offenses and must therefore be alleged in the Indictment. Because they
24  are, in fact, pleaded on the face of the indictment, Defendant's motion should be denied.

25  Even if further consideration were given, Defendant's position is unsupported by the law. In
26  United States v. Carranza, 289 F.3d 634, 643-44 (9th Cir. 2002), this Court reaffirmed longstanding
27  precedent that the government need not prove that defendants knew the type or quantity of controlled
28  substance they were smuggling in order to sustain a conviction under the federal drug statutes. See also

4

United States v. Salazar, 5 F.3d 445, 446 (9th Cir. 1993); United States v. Ramirez-Ramirez, 875 F.2d 772, 774 (9th Cir. 1989). The government must prove only that defendants knew they were smuggling some type of controlled substance. Carranza, 289 F.3d at 644.

Defendant, however, relying on the decisions in Apprendi, Buckland, and Mendoza-Paz, argues that Carranza should be ignored. The Ninth Circuit revisited its holding in Carranza after the decisions in Buckland and Mendoza-Paz in United States v. Hernandez, 322 F.3d 592, 602 (9th Cir. 2003). In Hernandez, the court rejected the mens rea argument made by the appellant, concluding:

> [Appellant] argues that the reasoning behind our decisions in Buckland and Mendoza-Paz require the government to prove that [Appellant] had the requisite mens rea with respect to both the type and quantity of drug he possessed and imported. This challenge is foreclosed by United States v. Carranza, 289 F.3d 634, 644 (9th Cir.2002) ("A defendant charged with importing or possessing a drug is not required to know the type and amount of the drug.").

Id.

This Court should reject Defendant's attempt to read into the drug statutes a new mens rea element. Defendant's motion to dismiss should be denied.

### C. The Grand Jury Instructions Were Not Faulty, And The Indictment Should Not Be Dismissed

#### 1. Introduction

Defendant makes contentions relating to two separate instructions given to the grand jury during its impanelment by District Judge Larry A. Burns on January 10, 2007. [Memorandum of Points and Authorities, pp. 4-15 (hereinafter "Memorandum")[1] Although recognizing that the Ninth Circuit in United States v. Navarro-Vargas, 408 F.3d 1184 (9th Cir. 2005) (en banc) generally found the two grand jury instructions constitutional, Defendant here contends Judge Burns went beyond the text of the approved instructions, and by so doing rendered them improper to the point that the Indictment should be dismissed. In fact, the identical arguments advanced by Defendant here were rejected in a 12 page

---

[1] Defendant supplies a "Partial Transcript" of the grand jury proceedings which records the instructions to the impaneled grand jurors after the voir dire had been conducted. [Appendix 1.] To amplify the record herein, we are supplying a redacted "Supplemental Transcript" which records relevant portions of the voir dire proceedings. [Appendix 2.]

5

written order issued by the Hon. Barry T. Moskowitz in this District and a recent Order entered by the Hon. John A. Houston. See Order Denying Defendant's Motion to Dismiss the Indictment in <u>United States v. Manuel Martinez-Covarrubias</u>, No. 07cr0491-BTM, filed October 11, 2007 (Appendix 3, hereto) and in the Amended Order Denying Defendant's Motion to Dismiss the Indictment in <u>United States v. Diana Jimenez-Bermudez</u>, 07cr1372-JAH (Appendix 4, hereto).

In making his arguments concerning the two separate instructions Defendant urges this Court to dismiss the Indictment on two separate bases relating to grand jury procedures, both of which were discussed in <u>United States v. Isgro</u>, 974 F.2d 1091 (9th Cir. 1992). Concerning the first attacked instruction, Defendant urges this Court to dismiss the Indictment by exercising its supervising powers over grand jury procedures. [Memorandum p. 5.] This is a practice the Supreme Court discourages as Defendant acknowledges, citing <u>United States v. Williams</u>, 504 U.S. 36, 50 (1992) ("Given the grand jury's operational separateness from its constituting court, it should come as no surprise that we have been reluctant to invoke the judicial supervisory power as a basis for prescribing modes of grand jury procedure. "). [<u>Id.</u>] <u>Isgro</u> reiterated:

> [A] district court may draw on its supervisory powers to dismiss an indictment. The supervisory powers doctrine "is premised on the inherent ability of the federal courts to formulate procedural rules not specifically required by the Constitution or Congress to supervise the administration of justice." <u>Before it may invoke this power, a court must first find that the defendant is actually prejudiced by the misconduct.</u> Absent such prejudice-that is, absent "'grave' doubt that the decision to indict was free from the substantial influence of [the misconduct]"-a dismissal is not warranted.

974 F.2d at 1094 (citation omitted, emphasis added). Concerning the second attacked instruction, in an attempt to dodge the holding in <u>Williams</u>, Defendant appears to base his contentions on the Constitution as a reason to dismiss the Indictment. [Memorandum p. 14 ("A grand jury so badly misguided is no grand jury at all under the Fifth Amendment").] Concerning that kind of a contention <u>Isgro</u> stated:

> [A] court may dismiss an indictment if it perceives constitutional error that interferes with the grand jury's independence and the integrity of the grand jury proceeding. "Constitutional error is found where the 'structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair, allowing the presumption of prejudice' to the defendant." Constitutional error may also be found "if [the] defendant can show a history of prosecutorial misconduct that is so systematic and pervasive that it affects the fundamental fairness of the proceeding or if the independence of the grand jury is substantially infringed."

1  974 F.2d at 1094 (citation omitted).[2/]

2  The portions of the two relevant instructions approved in Navarro-Vargas were:

> You cannot judge the wisdom of the criminal laws enacted by Congress, that is, whether or not there should or should not be a federal law designating certain activity as criminal.  That is to be determined by Congress and not by you.

408 F.3d at 1187, 1202.

> The United States Attorney and his Assistant United States Attorneys will provide you with important service in helping you to find your way when confronted with complex legal problems.  It is entirely proper that you should receive this assistance. If past experience is any indication of what to expect in the future, then you can expect candor, honesty, and good faith in matters presented by the government attorneys.

408 F.3d at 1187, 1206.

Concerning the "wisdom of the criminal laws" instruction, the court stated it was constitutional because, among other things, "[i]f a grand jury can sit in judgment of wisdom of the policy behind a law, then the power to return a no bill in such cases is the clearest form of 'jury nullification.'"[3/]  408 F.3d at 1203 (footnote omitted).  "Furthermore, the grand jury has few tools for informing itself of the policy or legal justification for the law;  it receives no briefs or arguments from the parties.  The grand jury has little but its own visceral reaction on which to judge the 'wisdom of the law.'"  Id.

Concerning the "United States Attorney and his Assistant United States Attorneys" instruction, the court stated:

> We also reject this final contention and hold that although this passage may include unnecessary language, it does not violate the Constitution.  The "candor, honesty, and good faith" language, when read in the context of the instructions as a whole, does not violate the constitutional relationship between the prosecutor and grand jury. . . .  The instructions balance the praise for the government's attorney by informing the grand jurors that some have criticized the grand jury as a "mere rubber stamp" to the prosecution and reminding them that the grand jury is "independent of the United States Attorney[.]"

---

[2/]  In Isgro the defendants choose the abrogation of constitutional rights route when asserting that prosecutors have a duty to present exculpatory evidence to grand juries. They did not prevail.  974 F.2d at 1096 ("we find that there was no abrogation of constitutional rights sufficient to support the dismissal of the indictment."  (relying on Williams)).

[3/]  The Court acknowledged that as a matter of fact jury nullification does take place, and there is no way to control it.  "We recognize and do not discount that some grand jurors might in fact vote to return a no bill because they regard the law as unwise at best or even unconstitutional.  For all the reasons we have discussed, there is no post hoc remedy for that;  the grand jury's motives are not open to examination."  408 F.3d at 1204 (emphasis in original).

7

408 F.3d at 1207. Id. "The phrase is not vouching for the prosecutor, but is closer to advising the grand jury of the presumption of regularity and good faith that the branches of government ordinarily afford each other." Id.

### 2. The Expanded "Wisdom of the Criminal Laws" Instruction Was Proper

Concerning whether the new grand jurors should concern themselves with the wisdom of the criminal laws enacted by Congress, Judge Burns' full instruction stated:

> You understood from the questions and answers that a couple of people were excused, I think three in this case, because they could not adhere to the principle that I'm about to tell you.
>
> But it's not for you to judge the wisdom of the criminal laws enacted by congress; that is, whether or not there should be a federal law or should not be a federal law designating certain activity is criminal is not up to you. That's a judgment that congress makes.
>
> And if you disagree with the judgment made by congress, then your option is not to say "Well I'm going to vote against indicting even though I think that the evidence is sufficient" or "I'm going to vote in favor of even though the evidence may be insufficient." Instead, your obligation is to contact your congressman or advocate for a change in the laws, but not to bring your personal definition of what the law ought to be and try to impose that through applying it in a grand jury setting.

Partial Transcript pp. 8-9.[4]

Defendant appears to acknowledge that in line with Navarro-Vargas, the role of the grand jury is not to determine whether or not there should be a federal law or should not be a federal law designating certain activity is criminal. [Memorandum p. 5-6.] Defendant notes, however, that "should 'you disagree with that judgment made by Congress, then your option is not to say 'well, I'm going to vote against indicting even though I think that the evidence is sufficient' or 'I'm going to vote in favor of even though the evidence maybe insufficient.'" [Memorandum p.6-7.] Defendant contends that this addition to the approved instruction, "flatly bars the grand jury from declining to indict because the grand jurors disagree with a proposed prosecution." [Memorandum p. 7.] In concocting his theory of why Judge Burns erred, Defendant posits that the expanded instruction renders irrelevant the debate

---

[4] The Supplemental Transcript supplied herewith (Appendix 2) recounts the excusing of the three individuals. This transcript involves the voir dire portion of the grand jury selection process, and has been redacted, to include redaction of the individual names, to provide only the relevant three incidents wherein prospective grand jurors were excused. Specifically, the pages of the Supplemental Transcript supplied are: page 15, line 10 - page 17, line 18; page 24, line 14 - page 28, line 2; page 38, line 9 - page 44, line 17.

about what the word "should" means. [Memorandum p. 7.] Defendant contends, "the instruction flatly bars the grand jury from declining to indict because they disagree with a proposed prosecution." [Memorandum p. 7.] This argument mixes-up two of the holdings in Navarro-Vargas in the hope they will blend into one. They do not.

Navarro-Vargas does permit flatly barring the grand jury from disagreeing with the wisdom of the criminal laws. The statement, "[y]ou cannot judge the wisdom of the criminal laws enacted by Congress," (emphasis added) authorized by Navarro-Vargas, 408 F.3d at 1187, 1202, is not an expression of discretion. Jury nullification is forbidden although acknowledged as a sub rosa fact in grand jury proceedings. 408 F.3d at 1204. In this respect Judge Burns was absolutely within his rights, and within the law, when he excused the three prospective grand jurors because of their expressed inability to apply the laws passed by Congress. Similarly, it was proper for him to remind the impaneled grand jurors that they could not question the wisdom of the laws. As we will establish, this reminder did not pressure the grand jurors to give up their discretion not to return an indictment. Judge Burns' words cannot be parsed to say that they flatly barred the grand jury from declining to indict because the grand jurors disagree with a proposed prosecution, because they do not say that. That aspect of a grand jury's discretionary power (i.e. disagreement with the prosecution) was dealt with in Navarro-Vargas in its discussion of another instruction wherein the term "should" was germane.[5/] 408 F.3d at 1204-06 ("'Should' Indict if Probable Cause Is Found"). This other instruction bestows discretion on the grand jury not to indict.[6/] In finding this instruction constitutional, the court stated in words that ring true here,

---

[5/] That instruction is not at issue here. It read as follows:

[Y]our task is to determine whether the government's evidence as presented to you is sufficient to cause you to conclude that there is probable cause to believe that the accused is guilty of the offense charged. To put it another way, you should vote to indict where the evidence presented to you is sufficiently strong to warrant a reasonable person's believing that the accused is probably guilty of the offense with which the accused is charged.

408 F.3d at 1187.

[6/] The court upheld the instruction stating:

This instruction does not violate the grand jury's independence. The language
(continued...)

9

1  "It is the grand jury's position in the constitutional scheme that gives it its independence, not any

2  instructions that a court might offer." 408 F.3d at 1206. The other instruction was also given by Judge

3  Burns in his own fashion as follows:

> The function of the grand jury, in federal court at least, is to determine probable cause. That's the simple formulation that I mentioned to a number of you during the jury selection process. Probable cause is just an analysis of whether a crime was committed and there's a reasonable basis to believe that and whether a certain person is associated with the commission of that crime, committed it or helped commit it.
>
> If the answer is yes, then as grand jurors your function is to find that the probable cause is there, that the case has been substantiated, and it should move forward. If conscientiously, after listening to the evidence, you say "No, I can't form a reasonable belief has anything to do with it, then your obligation, of course, would be to decline to indict, to turn the case away and not have it go forward.

Partial Transcript pp. 3-4.

> Probable cause means that you have an honestly held conscientious belief and that the belief is reasonable that a federal crime was committed and that the person to be indicted was somehow associated with the commission of that crime. Either they committed it themselves or they helped someone commit it or they were part of a conspiracy, an illegal agreement, to commit that crime.
>
> To put it another way, you should vote to indict when the evidence presented to you is sufficiently strong to warrant a reasonable person to believe that the accused is probably guilty of the offense which is proposed.

Partial Transcript p. 23.

While the new grand jurors were told by Judge Burns that they could not question the wisdom of the criminal laws per <u>Navarro-Vargas</u>, they were also told by Judge Burns they had the discretion not to return an indictment per <u>Navarro-Vargas</u>. Further, if a potential grand juror could not be dissuaded from questioning the wisdom of the criminal laws, that grand juror should be dismissed as a potential jury nullification advocate. See <u>Merced v. McGrath</u>, 426 F.3d 1076, 1079-80 (9th Cir. 2005). Thus,

---

[6]/(...continued)
of the model charge does not state that the jury "must" or "shall" indict, but merely that it "should" indict if it finds probable cause. As a matter of pure semantics, it does not "eliminate discretion on the part of the grand jurors," leaving room for the grand jury to dismiss even if it finds probable cause.

408 F.3d at 1205 (confirming holding in <u>United States v. Marcucci</u>, 299 F.3d 1156, 1159 (9th Cir. 2002) (per curiam)). "In this respect, the grand jury has even greater powers of nonprosecution than the executive because there is, literally, no check on a grand jury's decision not to return an indictment. 408 F.3d at 1206.

there was no error requiring dismissal of this Indictment or any other indictment by this Court exercising its supervisory powers.

Further, a reading of the dialogues between Judge Burns and the three excused jurors found in the Supplemental Transcript excerpts (Appendix 2) reflects a measured, thoughtful, almost mutual decision, that those three individuals should not serve on the grand jury because of their views. Judge Burns' reference back to those three colloquies cannot be construed as pressuring the impaneled grand jurors, but merely bespeaks a reminder to the grand jury of their duties.

Finally, even if there was an error, Defendant has not demonstrated he was actually prejudiced thereby, a burden he has to bear. "Absent such prejudice--that is, absent 'grave' doubt that the decision to indict was free from the substantial influence of [the misconduct]'--a dismissal is not warranted." Isgro, 974 F.2d at 1094.

### 3. The Addition to the "United States Attorney and his Assistant United States Attorneys" Instruction Did Not Violate the Constitution

Concerning the new grand jurors' relationship to the United States Attorney and the Assistant U.S. Attorneys, Judge Burns variously stated:

> [T]here's a close association between the grand jury and the U.S. Attorney's Office. . . . . You'll work closely with the U.S. Attorney's Office in your investigation of cases.

Partial Transcript p. 11.

> [I]n my experience here in the over 20 years in this court, that kind of tension does not exist on a regular basis, that I can recall, between the U.S. Attorney and the grand juries. They generally work together.

Partial Transcript p. 12.

> Now, again, this emphasizes the difference between the function of the grand jury and the trial jury. You're all about probable cause. If you think that there's evidence out there that might cause you to say "well, I don't think probable cause exists," then it's incumbent upon you to hear that evidence as well. As I told you, in most instances, the U.S. Attorneys are duty-bound to present evidence that cuts against what they may be asking you to do if they're aware of that evidence.

Partial Transcript p. 20.[7]

---

[7] Just prior to this instruction, Judge Burns had informed the grand jurors that:

[T]hese proceedings tend to be one-sided necessarily. . . . Because it's not a full-blown

(continued...)

11

> As a practical matter, you will work closely with government lawyers. The U.S. Attorney and the Assistant U.S. Attorneys will provide you with important services and help you find your way when you're confronted with complex legal matters. It's entirely proper that you should receive the assistance from the government lawyers.
>
> But at the end of the day, the decision about whether a case goes forward and an indictment should be returned is yours and yours alone. If past experience is any indication of what to expect in the future, then you can expect that the U.S. Attorneys that will appear in front of you will be candid, they'll be honest, that they'll act in good faith in all matters presented to you.

Partial Transcript pp. 26-27.

Commenting on the phrase, "the U.S. Attorneys are duty-bound to present evidence that cuts against what they may be asking you to do if they're aware of that evidence," Defendant proposes that by making that statement, "Judge Burns also assured the grand jurors that prosecutors would present to them evidence that tended to undercut probable cause." [Memorandum p.13.] Defendant then ties this statement to the later instruction which "advis[ed] the grand jurors that they 'can expect that the U.S. Attorneys that will appear in front of [them] will be candid, they'll be honest, and . . . they'll act in good faith in all matters presented to you.'" [Memorandum p.14.] From this lash-up Defendant contends:

> These <u>instructions create a presumption</u> that, in cases where the prosecutor does not present exculpatory evidence, no exculpatory evidence exists. A grand juror's reasoning, in a case in which no exculpatory evidence was presented, would proceed along these lines:
>
> (1) I have to consider evidence that undercuts probable cause.
>
> (2) The candid, honest, duty-bound prosecutor would, in good faith, have presented any such evidence to me, if it existed.
>
> (3) Because no such evidence was presented to me, I may conclude that there is none. Even if some exculpatory evidence were presented, a grand juror would necessarily <u>presume</u> that the evidence presented represents the universe of all available exculpatory evidence; if there was more, the duty-bound prosecutor would have presented it.
>
> The instructions therefore discourage investigation--if exculpatory evidence were out there, the prosecutor would present it, so investigation is a waste of time and provide additional support to every probable cause determination: i.e., this case may be week [sic], but I know that there is nothing on the other side of the equation because it was not presented. A grand jury so badly misguided is no grand jury at all under the Fifth Amendment.

---

[7]/(...continued)
trial, you're likely in most cases not to hear the other side of the story, if there is another side to the story.

Partial transcript p. 19.

12

[Memorandum p. 14.]  (Emphasis added.)[8]

Frankly, Judge Burns' statement that "the U.S. Attorneys are duty-bound to present evidence that cuts against what they may be asking you to do if they're aware of that evidence," is directly contradicted by United States v. Williams, 504 U.S. 36, 51-53 (1992) ("If the grand jury has no obligation to consider all 'substantial exculpatory' evidence, we do not understand how the prosecutor can be said to have a binding obligation to present it."[9] (emphasis added)).  See also, United States v. Haynes, 216 F.3d 789, 798 (9th Cir. 2000) ("Finally, their challenge to the government's failure to introduce evidence impugning Fairbanks's credibility lacks merit because prosecutors have no obligation to disclose 'substantial exculpatory evidence' to a grand jury." (citing Williams) (emphasis added)).

However, the analysis does not stop there.  Prior to assuming his judicial duties, Judge Burns was a member of the United States Attorney's Office, and made appearances in front of the federal grand jury.[10]  As such he was undoubtedly aware of the provisions in the United States Attorneys' Manual ("USAM").[11]  Specifically, it appears he is aware of USAM Section 9-11.233 thereof which reads:

---

[8]  The term "presumption" is too strong a word in this setting. The term "inference" is more appropriate. See McClean v. Moran, 963 F.2d 1306 (9th Cir. 1992) which states there are (1) permissive inferences; (2) mandatory rebuttable presumptions; and (3) mandatory conclusive presumptions, and explains the difference between the three. 963 F.2d at 1308-09 (discussing Francis v. Franklin, 471 U.S. 314 (1985); Sandstrom v. Montana, 442 U.S. 510 (1979); and Ulster County Court v. Allen, 442 U.S. 140, 157 & n. 16 (1979)). See also United States v. Warren, 25 F.3d 890, 897 (9th Cir. 1994).

[9]  Note that in Williams the Court established:

> Respondent does not contend that the Fifth Amendment itself obliges the prosecutor to disclose substantial exculpatory evidence in his possession to the grand jury.  Instead, building on our statement that the federal courts "may, within limits, formulate procedural rules not specifically required by the Constitution or the Congress," he argues that imposition of the Tenth Circuit's disclosure rule is supported by the courts' "supervisory power."

504 U.S. at 45 (citation omitted).  The Court concluded, "we conclude that courts have no authority to prescribe such a duty [to present exculpatory evidence] pursuant to their inherent supervisory authority over their own proceedings." 504 U.S. at 55.  See also, United States v. Haynes, 216 F.3d 789, 797-98 (9th Cir. 2000).  However, the Ninth Circuit in Isgro used Williams' holding that the supervisory powers would not be invoked to ward off an attack on grand jury procedures couched in constitutional terms. 974 F.2d at 1096.

[10]  He recalled those days when instructing the new grand jurors. [Partial Transcript pp. 12, 14-16, 17-18.]

[11]  The USAM is available on-line at www.usdoj.gov/usao/eousa/foia_reading_room/
(continued...)

13

> In <u>United States v. Williams</u>, 112 S.Ct. 1735 (1992), the Supreme Court held that the Federal courts' supervisory powers over the grand jury did not include the power to make a rule allowing the dismissal of an otherwise valid indictment where the prosecutor failed to introduce substantial exculpatory evidence to a grand jury. It is the <u>policy</u> of the Department of Justice, however, that when a prosecutor conducting a grand jury inquiry is personally aware of <u>substantial evidence that directly negates the guilt</u> of a subject of the investigation, the prosecutor <u>must present or otherwise disclose</u> such evidence to the grand jury before seeking an indictment against such a person. While a failure to follow the Department's policy should <u>not result in dismissal of an indictment</u>, appellate courts <u>may refer violations of the policy to the Office of Professional Responsibility</u> for review.

(Emphasis added.)[12] This policy was reconfirmed in USAM 9-5.001, Policy Regarding Disclosure of Exculpatory and Impeachment Information, Paragraph "A," "this policy does not alter or supersede the policy that requires prosecutors to disclose '<u>substantial evidence</u> that directly negates the guilt of a subject of the investigation' to the grand jury before seeking an indictment, <u>see</u> USAM § 9-11.233 ." (Emphasis added.)[13]

The facts that Judge Burns' statement contradicts <u>Williams</u>, but is in line with self-imposed guidelines for United States Attorneys, does not create the constitutional crisis proposed by Defendant. No improper presumption/inference was created when Judge Burns reiterated what he knew to be a self-imposed duty to the new grand jurors. Simply stated, in the vast majority of the cases the reason the prosecutor does not present "substantial" exculpatory evidence, is because no "substantial" exculpatory evidence exists.[14] If it does exist, as mandated by the USAM, the evidence should be presented to the

---

[11](...continued)
usam/index.html.

[12] <u>See</u> www.usdoj.gov/usao/eousa/foia_reading_room/usam/ title9/11mcrm.htm. Even if Judge Burns did not know of this provision in the USAM while he was a member of the United States Attorney's Office, because of the accessability of the USAM on the internet, as the District Judge overseeing the grand jury he certainly could determine the required duties of the United States Attorneys appearing before the grand jury from that source.

[13] <u>See</u> www.usdoj.gov/usao/eousa/foia_reading_room/usam/title9/5mcrm.htm. Similarly, this new section does not bestow any procedural or substantive rights on defendants.

> Under this policy, the government's disclosure will exceed its constitutional obligations. This expanded disclosure policy, however, does not create a general right of discovery in criminal cases. Nor does it provide defendants with any additional rights or remedies.

USAM 9-5.001, ¶ "E". <u>See</u> www.usdoj.gov/usao/eousa/foia_reading_room/usam/title9/ 5mcrm.htm.

[14]    Recall Judge Burns also told the grand jurors that:

(continued...)

grand jury by the Assistant U.S. Attorney upon pain of possibly having his or her career destroyed by an Office of Professional Responsibility investigation. Even if there is some nefarious slant to the grand jury proceedings when the prosecutor does not present any "substantial" exculpatory evidence, because there is none, the negative inference created thereby in the minds of the grand jurors is legitimate. In cases such as Defendant's, the Government has no "substantial" exculpatory evidence generated from its investigation or from submissions tendered by the defendant.[15] There is nothing wrong in this scenario with a grand juror inferring from this state-of-affairs that there is no "substantial" exculpatory evidence, or even if some exculpatory evidence were presented, the evidence presented represents the universe of all available exculpatory evidence.

Further, just as the instruction language regarding the United States Attorney attacked in Navarro-Vargas was found to be "unnecessary language [which] does not violate the Constitution," 408 F.3d at 1207, so too the "duty-bound" statement was unnecessary when charging the grand jury concerning its relationship with the United States Attorney and her Assistant U.S. Attorneys, and does not violate the Constitution. In United States v. Isgro, 974 F.2d 1091 (9th Cir. 1992), the Ninth Circuit while reviewing Williams established that there is nothing in the Constitution which requires a prosecutor to give the person under investigation the right to present anything to the grand jury (including his or her testimony or other exculpatory evidence), and the absence of that information does not require dismissal of the indictment. 974 F.2d at 1096 ("Williams clearly rejects the idea that there exists a right to such 'fair' or 'objective' grand jury deliberations."). That the USAM imposes a duty on United States Attorneys to present "substantial" exculpatory evidence to the grand jury is irrelevant since by its own terms the USAM excludes defendants from reaping any benefits from the self-imposed

---

[14](...continued)
[T]hese proceedings tend to be one-sided necessarily. . . . Because it's not a full-blown trial, you're likely in most cases not to hear the other side of the story, if there is another side to the story.

Partial transcript p. 19.

[15]   Realistically, given "that the grand jury sits not to determine guilt or innocence, but to assess whether there is adequate basis for bringing a criminal charge [i.e. only finding probable cause]," Williams, 504 U.S. at 51 (citing United States v. Calandra, 414 U.S. 338, 343-44 (1974)), no competent defense attorney is going to preview the defendant's defense story prior to trial assuming one will be presented to a fact-finder. Therefore, defense submissions to the grand jury will be few and far between.

1 policy.[16/] Therefore, while the "duty-bound" statement was an interesting tidbit of information, it was
2 unnecessary in terms of advising the grand jurors of their rights and responsibilities, and does not cast
3 an unconstitutional pall upon the instructions which requires dismissal of the indictment in this case or
4 any case. The grand jurors were repeatedly instructed by Judge Burns that, in essence, the United Sates
5 Attorneys are "good guys," which was authorized by Navarro-Vargas. 408 F.3d at 1206-07 ("laudatory
6 comments . . . not vouching for the prosecutor"). But he also repeatedly "remind[ed] the grand jury that
7 it stands between the government and the accused and is independent," which was also required by
8 Navarro-Vargas. 408 F.3d at 1207. In this context the unnecessary "duty-bound" statement does not
9 mean the instructions were constitutionally defective requiring dismissal of this indictment or any
10 indictment.

11       The "duty bound" statement constitutional contentions raised by Defendant do not indicate that
12 the "'structural protections of the grand jury have been so compromised as to render the proceedings
13 fundamentally unfair, allowing the presumption of prejudice' to the defendant," and "[the] defendant
14 can[not] show a history of prosecutorial misconduct that is so systematic and pervasive that it affects
15 the fundamental fairness of the proceeding or if the independence of the grand jury is substantially
16 infringed." Isgro, 974 F.2d at 1094 (citation omitted). Therefore, this Indictment, or any other
17 indictment, need not be dismissed.

---

28     [16/]    The apparent irony is that although an Assistant U.S. Attorney will not lose a case for failure to present exculpatory information to a grand jury per Williams, he or she could lose his or her job with the United States Attorney's Office for such a failure per the USAM.

## V.

## **CONCLUSION**

For the foregoing reasons, the Government respectfully requests that the Court deny Defendant's motions.

DATED: March 23, 2008

                                                Respectfully Submitted,

                                                KAREN P. HEWITT
                                                United States Attorney

                                                *s/Lawrence A. Casper*
                                                LAWRENCE A. CASPER
                                                Assistant U.S. Attorney
                                                Attorneys for Plaintiff
                                                United States of America
                                                Email: lawrence.casper@usdoj.gov

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>GABINO ALBERTO RODRIGUEZ-LARA,<br><br>    Defendant. | Case No.07cr0373-JM<br><br><br>CERTIFICATE OF SERVICE |

IT IS HEREBY CERTIFIED THAT:

  I, LAWRENCE A. CASPER, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

  I am not a party to the above-entitled action. I have caused service of Government's Response and **Opposition to Defendant's Motions to: (1)DISMISS INDICTMENT DUE TO UNCONSTITUTIONAL STATUTE; (2) DISMISS INDICTMENT FOR FAILURE TO ALLEGE AMOUNT AND TYPE OF DRUGS; AND (3) DISMISS INDICTMENT DUE TO IMPROPER GRAND JURY INSTRUCTIONS**, together with statement of facts and memorandum of points and authorities on the following by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

  1. Candis Mitchell
    Attorney for Defendant
    Federal Defenders of San Diego, Inc.

  I hereby certify that I have caused to be mailed the foregoing, by the United States Postal Service, to the following non-ECF participants on this case:

  1. N/A

the last known address, at which place there is delivery service of mail from the United States Postal Service.

  I declare under penalty of perjury that the foregoing is true and correct.

  Executed on March 23, 2008

            *s/Lawrence A. Casper*
            LAWRENCE A. CASPER