1  KAREN P. HEWITT
   United States Attorney
2  PAUL L. STARITA
   Assistant U.S. Attorney
3  California State Bar No. 219573
   Federal Office Building
4  880 Front Street, Room 6293
   San Diego, California  92101-8893
5  Telephone: (619) 557-6507/5956

6  Attorneys for Plaintiff
   United States of America
7

8                        UNITED STATES DISTRICT COURT

9                       SOUTHERN DISTRICT OF CALIFORNIA

10 UNITED STATES OF AMERICA,              )  Criminal Case No. 08CR0373-JM
                                          )
11                 Plaintiff,             )  Date: June 13, 2008
                                          )  Time: 1:30 p.m.
12         v.                             )
                                          )  **STATEMENT OF FACTS AND
13 GABINO ALBERTO RODRIGUEZ-LARA,         )  MEMORANDUM OF POINTS AND
                                          )  AUTHORITIES IN SUPPORT OF UNITED
14                                        )  STATES' MOTIONS <u>IN</u> <u>LIMINE</u>**
                   Defendant.             )
15                                        )
                                          )
16 _____

17        COMES NOW, the plaintiff, the UNITED STATES OF AMERICA, by and through its counsel,

18 KAREN P. HEWITT, United States Attorney, and Paul L. Starita, Assistant United States Attorney, and

19 hereby files its statement of facts and memorandum of points and authorities in support of its motions

20 in <u>limine</u>.

21 //
22 //
23 //
24 //
25 //
26 //
27 //
28 //

# I

## STATEMENT OF THE CASE

On February 13, 2008, a federal grand jury in the Southern District of California returned a two-count Indictment charging defendant Gabino Alberto Rodriguez-Lara ("Defendant") with: (i) importing approximately 22.96 kilograms (approximately 50.51 pounds) of marijuana, in violation of 21 U.S.C. §§ 952 and 960, and (ii) possessing with intent to distribute that same amount of marijuana, in violation of 21 U.S.C. § 841(a)(1). Defendant was arraigned on February 29, 2008, and entered a not guilty plea in this case.

# II

## STATEMENT OF FACTS

**A.    PRIMARY INSPECTION AREA**

On December 14, 2007, at approximately 4:17 p.m., Defendant was the driver and sole occupant of a maroon 1994 Ford Escort bearing California license plates (BCN9638) that crossed into the United States from Mexico at the Calexico, California, West Port of Entry. Customs and Border Protection ("CBP") Officer Carmen Estrada was assigned to primary lane number four when Defendant applied for admission. Defendant presented his Border Crossing Card and CBP Officer Estrada observed Defendant drop his card. At this point, CBP Officer Estrada noticed Defendant's hands shaking as he picked the card up to hand it to him. Defendant provided a negative customs declaration and CBP Officer Estrada inquired about the vehicle and the Defendant's destination. Defendant claimed that he had purchased the vehicle approximately three months earlier but that he had not yet registered the vehicle in his name. Defendant claimed he was on his way to Calexico to visit his girlfriend. During this questioning, CBP Officer Estrada noticed that Defendant failed to make eye contact and kept his hands on his knees with a hard grip the entire time. A Treasury Enforcement Communications System ("TECS") query of Defendant's name resulted in an active lookout due to a non-factory compartment found in a vehicle registered to the Defendant. CBP Officer Estrada referred Defendant and his vehicle to the secondary inspection area for further processing.

//

//

1  **B.**    **SECONDARY INSPECTION AREA**

2      CBP Officer Miguel Cardenas assumed responsibility for the inspection in the secondary lot.
3  Defendant provided a negative customs declaration and told the CBP Officer Cardenas that he was late
4  for a dinner date with his girlfriend in Calexico, California. CBP Officer Cardenas questioned
5  Defendant about the vehicle and Defendant claimed that he had owned the vehicle for three months but
6  had not registered the vehicle in his name. CBP Officer Cardenas observed that Defendant's hands
7  were shaking and he was constantly grabbing his knees. During their conversation, Customs and Border
8  Protection Canine Enforcement Officer ("CEO") Scott Parrish was conducting a lot sweep with his
9  narcotic detector dog. The dog alerted to the trunk area of Defendant's vehicle. CEO Parrish informed
10 CBP Officer Cardenas of the alert.

11     CBP Officer Cardenas continued his examination of the vehicle and discovered two packages
12 concealed within the spare tire wheel well located in the green trunk area of the vehicle. CBP Officer
13 Cardenas Cardenas probed a package, exposing a green leafy substance which field tested positive for
14 the presence of marijuana. A total of two packages with a total weight of 22.96 kilograms (50.51
15 pounds) were removed from the vehicle.

16 **C.**    **DEFENDANT'S POST-*MIRANDA* STATEMENT**

17     Immigration and Customs Enforcement (ICE) Special Agents Lorena Mulvihill and Chad
18 Worgen responded to the apprehension of the Defendant. At approximately 7:18 p.m., Defendant was
19 read his Miranda rights and he invoked.

20 **D.**    **PRIOR DETENTION AT CALEXICO WEST PORT OF ENTRY**

21     On or about November 30, 2007, Defendant was referred to the secondary inspection area at the
22 Calexico West Port of Entry as the driver and sole occupant of a 2000 Volkswagen Jetta. At the
23 secondary inspection area, Defendant presented his Border Crossing Card to CBP Officer Michael Price.
24 CBP Officer Price noticed that Defendant was sitting too high in the vehicle. Officer Price asked
25 Defendant standard questions regarding the vehicle's ownership and Defendant responded that he owned
26 the vehicle and that he had owned it for two weeks. After CBP Officer Price had Defendant get out of
27 the vehicle, he found a discrepancy in the floor of the vehicle under the front seat. CBP Officer Price
28 then escorted Defendant into the secondary office. At this time, CBP Officer Price noticed that

Defendant was very nervous and Defendant attempted to "pull away" from CBP Officer Price. As a result, CBP Officer Price placed Defendant in a holding cell so he could complete the inspection of Defendant's vehicle. During further inspection, CBP Officer Price discovered a newly constructed non-factory compartment under the front seat of the vehicle. CBP Officer Price opened the non-factory compartment and discovered that it was empty. Defendant was then permitted to leave the Calexico West Port of Entry with his vehicle and a "look-out" was placed in TECS for Defendant and the vehicle.

### III

### POINTS AND AUTHORITIES

**A.  THE COURT SHOULD EXCLUDE WITNESSES DURING TRIAL WITH THE EXCEPTION OF THE UNITED STATES' CASE AGENT**

Under Federal Rules of Evidence, Rule 615, "a person whose presence is shown by a party to be essential to the presentation of the party's cause" should not be ordered excluded from the court during trial. The case agent in this matter, ICE Special Agent Mulvihill, has been critical in moving this case forward to this point and is considered by the United States to be an integral part of the trial team. As such, the case agent's presence at trial is necessary to the United States. Further, the United States requests that Defendant's testifying witnesses be excluded during trial pursuant to Rule 615.

**B.  THE COURT SHOULD PROHIBIT REFERENCE TO DEFENDANT'S HEALTH, AGE, FINANCES, EDUCATION AND POTENTIAL PUNISHMENT**

Evidence of, and thus argument referring to, the Defendant's health, age, finances, education and potential punishment is not relevant for the purpose of determining a defendant's guilt or innocense at trial. "Evidence which is not relevant is not admissible." Fed. R. Evid. 402. Federal Rules of Evidence, Rule 403, provides further that even relevant evidence may be inadmissible "if its probative value is substantially outweighed by the danger of unfair prejudice." Further, the Ninth Circuit Model Jury Instructions explicitly instruct jurors to "not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy." § 3.1 (2003 Edition, West Publishing Co.).

Moreover, it is inappropriate for a jury to be informed of the consequences of their verdict. United States v. Frank, 956 F.2d 872, 879 (9th Cir. 1991), cert. denied, 506 U.S. 932 (1992). Any mention of penalty or felony status is irrelevant as it sheds no light on Defendant's guilt or innocence.

//

1 Therefore, the United States respectfully requests that this Court prohibit any reference to punishment
2 at any point in this trial.

3 Reference to Defendant's health, age, finances, education and potential punishment may be
4 relevant at sentencing. However, in a drug smuggling trial, such reference is not only irrelevant and
5 unfairly prejudicial, but a blatant play for sympathy and jury nullification as well.

6 **C.    SELF-SERVING HEARSAY IS INADMISSIBLE**

7 Defendant's out of court statements are inadmissible hearsay when offered by the Defendant
8 through witnesses. Defendant cannot rely on Federal Rules of Evidence, Rule 801(d)(2), because he
9 is not the proponent of the evidence, and the evidence is not being offered against him. Defendant
10 cannot attempt to have "self-serving hearsay" brought before the jury without the benefit of cross-
11 examination. See, e.g., United States v. Ortega, 203 F.3d 675, 679 (9th Cir. 2000); United States v.
12 Fernandez, 839 F.2d 639, 640 (9th Cir. 1988). In this case, the United States anticipates that Defendant
13 may attempt to have the United States' witnesses testify about certain statements which Defendant made
14 to government agents or to defense witnesses. Thus, the United States moves, in limine, to prohibit
15 Defendant from eliciting self-serving hearsay from: (a) the United States' witnesses or (b) defense
16 witnesses.

17 **D.    THE COURT SHOULD LIMIT CHARACTER EVIDENCE**

18 The United States anticipates that Defendant may improperly attempt to introduce testimony
19 regarding Defendant's specific acts of prior good conduct. Testimony as to multiple instances of good
20 conduct violates Federal Rules of Evidence, Rule 405(a). United States v. Barry, 841 F.2d 1400, 1403
21 (9th Cir. 1987); Government of Virgin Islands v. Grant, 775 F.2d 508, 512 (3d Cir. 1985). Further,
22 Federal Rules of Evidence, Rule 404(a)(1), states that evidence of a person's character is not admissible
23 for the purpose of proving a person's actions on a particular occasion except "evidence of a pertinent
24 trait of character offered by an accused or by the prosecution to rebut the same."

25 A character witness can not offer specific instances of conduct by the defendant which would
26 tend to support the reputation of the defendant. United States v. Giese, 597 F.2d 1170 (9th Cir. 1979)
27 cert. denied, 444 U.S. 972 (1979) (character witnesses must restrict their direct testimony to appraisals
28 //

1  of defendant's reputation); United States v. Hedgecorth, 873 F.2d 1307 (9th Cir. 1989) ("While a
2  defendant may show a characteristic for lawfulness through opinion or reputation testimony, evidence
3  of specific acts is generally inadmissible").

4  In interpreting the permissible scope of character evidence under Rule 404(a), the Ninth Circuit
5  has ruled that presentation of witnesses to testify about a defendant's character for "law abidingness"
6  and honesty is permissible.  However, asking a defense witness about a defendant's propensity to
7  engage in a specific type of criminal activity is not allowed under Rule 404(a).  See United States v.
8  Diaz, 961 F.2d 1417 (9th Cir. 1992) (impermissible to ask character witness about defendant's
9  propensity to engage in large scale drug dealing).

10  Thus, the United States hereby moves in limine to prohibit Defendant from introducing
11  testimony from any character witness about (a) a specific instance of Defendant's conduct, and (b)
12  Defendant's propensity to be involved in drug smuggling.

13  **E.     THE COURT SHOULD PRECLUDE EVIDENCE OF DURESS AND NECESSITY**

14  A pretrial motion is an appropriate means of testing the sufficiency of a proffered defense and
15  precluding evidence thereof if the defense is found to be insufficient.  Fed. R. Crim. P. 12(b) ("Any
16  defense, objection, or request which is capable of determination without the trial of the general issue
17  may be raised before trial by motion."); United States v. Peltier, 693 F.2d 96, 97-98 (9th Cir. 1982)
18  (per curiam); United States v. Shapiro, 669 F.2d 593, 596-97 (9th Cir. 1982); see also Fed. R. Crim.
19  P. 12(e).

20  Generally, motions are capable of pretrial determination if they raise issues of law, rather than
21  issues of fact.  United States v. Shortt Accountancy Corporation, 785 F.2d 1448, 1452 (9th Cir. 1986).
22  Courts have specifically approved the pretrial exclusion of evidence relating to a legally insufficient
23  duress defense on numerous occasions.  See United States v. Bailey, 444 U.S. 394 (1980) (addressing
24  duress); United States v. Moreno, 102 F.3d 994, 997 (9th Cir. 1996), cert. denied, 118 S. Ct. 86 (1997)
25  (addressing duress).  Similarly, a district court may preclude a necessity defense where "the evidence,
26  as described in the defendant's offer of proof, is insufficient as a matter of law to support the proffered
27  defense."  United States v. Schoon, 971 F.2d 193, 195 (9th Cir. 1992).

28  //

In order to rely on a defense of duress, a defendant must establish a prima facie case that:

(1) defendant committed the crime charged because of an immediate threat of death or serious bodily harm;

(2) defendant had a well-grounded fear that the threat would be carried out; and

(3) there was no reasonable opportunity to escape the threatened harm.

United States v. Bailey, 444 U.S. 394, 410-11 (1980); Moreno, 102 F.3d at 997. If Defendant fails to make a threshold showing as to each and every element of the defense, defense counsel should not burden the jury with comments relating to such a defense. See, e.g., Bailey, 444 U.S. at 416.

A defendant must establish the existence of four elements to be entitled to a necessity defense:

(1) that he was faced with a choice of evils and chose the lesser evil;

(2) that he acted to prevent imminent harm;

(3) that he reasonably anticipated a causal relationship between his conduct and the harm to be avoided; and

(4) that there was no other legal alternatives to violating the law.

See Schoon, 971 F.2d at 195; United States v. Dorrell, 758 F.2d 427, 430-31 (9th Cir. 1985). A court may preclude invocation of the defense if "proof is deficient with regard to any of the four elements." See Schoon, 971 F.2d at 195.

The United States hereby moves to preclude defense counsel from making any comments during opening statement or the case-in-chief that relate to any purported defense of "duress" or "coercion" or "necessity" unless Defendant makes a prima facie showing satisfying each and every element of the defense. The United States respectfully requests that the Court rule on this issue prior to opening statements to avoid the prejudice, confusion, and invitation for jury nullification that would result from such comments.

**F.  EXPERT TESTIMONY FOR THE UNITED STATES SHOULD BE ADMITTED**

Absent a stipulation by Defendant, the United States intends to call a Forensic Chemist from the Drug Enforcement Administration who will testify that the substance seized from Defendant's vehicle was marijuana. Additionally, the United States intends to call a Special Agent from United States Immigration and Customs Enforcement ("ICE") as an expert in narcotics trafficking and the value of illicit narcotics, namely marijuana.

### 1. **Standard of Admissibility**

If specialized knowledge will assist the trier-of-fact in understanding the evidence or determining a fact in issue, a qualified expert witness may provide opinion testimony on the issue in question. Fed. R. Evid. 702. The trial judge is the gatekeeper regarding the type and scope of expert testimony that should be admitted in any particular trial, and has "broad latitude" in determining the relevance and reliability of such testimony. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 142 (1999).

Determining whether expert testimony would assist the trier-of-fact in understanding the facts in issue is within the sound discretion of the trial judge. United States v. Alonso, 48 F.3d 1536, 1539 (9th Cir. 1995); United States v. Lennick, 18 F.3d 814, 821 (9th Cir. 1994). The district court may consider the Daubert test or any other factors in addressing relevant reliability concerns regarding expert testimony. Kumho, 526 U.S. at 149-50 (noting that "there are many different kinds of experts, and many different kinds of expertise," including, "experts in drug terms, handwriting analysis, criminal modus operandi, . . . .").

The expert's opinion may be based on hearsay or facts not in evidence when the facts or data relied upon are of the type reasonably relied upon by experts in the field. Fed. R. Evid. 703; see, e.g., United States v. Gil, 58 F.3d 1414, 1422 (9th Cir. 1995) (stating "[w]e have consistently held that government agents or similar persons may testify as to the general practices of criminals to establish the defendants' modus operandi.") (internal quotations omitted); see also United States v. Hankey, 203 F.3d 1160, 1168-70 (9th Cir. 2000) (affirming district court's admission of gang expert testimony that gang members would be subject to violent retribution if they testified against another gang member). An expert may provide opinion testimony even if the testimony embraces an ultimate issue to be decided by the trier-of-fact. Fed. R. Evid. 704; United States v. Plunk, 153 F.3d 1011, 1018 (9th Cir. 1998). An experienced narcotics agent may testify in the form of an opinion even if that opinion is based in part on information from other agents familiar with the issue. United States v. Golden, 532 F.2d 1244, 1248 (9th Cir. 1976). The proposed expert testimony "alerts [the jury] to the possibility that combinations of seemingly innocuous events may indicate criminal behavior." United States v. Johnson, 735 F.2d 1200, 1202 (9th Cir. 1984).

//

1     **2.**     **Evidence Regarding Value of the Marijuana**

2     The United States intends to offer the testimony of an ICE Special Agent regarding the retail or "street" value and the wholesale value, both in the United States and Mexico, of the marijuana found concealed in Defendant's vehicle. As discussed below, the Ninth Circuit Court of Appeals has upheld the use of such expert testimony at trial.

    In <u>United States v. Ogbuehi</u>, 18 F.3d 807, 812 (9th Cir. 1994), the defendant was charged with importation of heroin. At trial, the United States introduced expert testimony regarding the street value of the heroin, assuming the drugs had been repeatedly cut and sold on the street. The Ninth Circuit held that admission of such testimony was proper and that counsel can argue reasonable inferences from the evidence. <u>Id.</u> at 812; <u>see also</u> <u>United States v. Savinovich</u>, 845 F.2d 834, 838 (9th Cir. 1988) (price, quantity and quality of narcotics is relevant to demonstrate defendant's knowledge of the drugs and intent to distribute them); <u>United States v. Kearney</u>, 560 F.2d 1358, 1369 (9th Cir. 1977) (street value of narcotics relevant to demonstrate defendant's knowledge).

    In this case, knowledge and intent are essential elements of the offenses charged. The testimony of the ICE Special Agent regarding the value of the marijuana seized is strong circumstantial evidence that Defendant knew the marijuana was concealed in his vehicle on the day of his arrest and that he intended to further distribute the marijuana. Additionally, such evidence will also assist the jury's understanding of how crossing the international border impacts the value of the marijuana at issue in this case. Thus, the Court should admit this testimony.

    **3.**     **The Amount of Marijuana Seized is an Amount for Distribution**

    The United States further intends to introduce the testimony of an ICE Special Agent for the purpose of proving that the amount of marijuana seized from Defendant's vehicle is an amount for distribution, not for personal use. Such testimony is relevant to the issues of knowledge and intent to distribute. <u>See</u> <u>United States v. Gomez-Norena</u>, 908 F.2d 497, 501 (9th Cir. 1990); <u>see also</u> <u>United States v. Kinsey</u>, 843 F.2d 383, 387-88 (9th Cir.), <u>cert. denied</u>, 488 U.S. 836 (1988). Further, it is particularly significant to the jury's understanding of the facts in this case because the amount of marijuana - although substantial - is small relative to many other newsworthy drug-importation cases.

//

Accordingly, the Court should admit this testimony to enable the United States to prove an essential element of a charged offense.

### 4. Evidence Regarding *Modus Operandi* of Drug Couriers

The Court should allow the United States to present expert testimony regarding the *modus operandi* of drug couriers, if Defendant attempts to raise the issue that Defendant was an "unknowing courier" during opening statement, cross-examination, or Defendant's case-in-chief. The United States's expert testimony would be limited to the following: (1) that drug traffickers typically do not entrust large amounts of drugs or money to unknowing couriers; and (2) that couriers, such as Defendant, do not typically participate in the loading or unloading of narcotics. Such testimony is proper to help the jury understand the evidence in the case, to put that evidence in a relevant context and to ensure the jury does not decide the case in a vacuum. The evidence is relevant to the question of whether Defendant knew drugs were in the vehicle he drove into the United States. This is exactly the type of evidence the Ninth Circuit deemed appropriate in United States v. Murillo, 255 F.3d 1169, 1176-78 (9th Cir. 2001) and numerous other decisions.

Federal Rule of Evidence, 702, allows an expert witness to testify if "specialized knowledge will assist the trier of fact to understand the evidence or determine a fact in issue." Fed. R. Evid. 702. However, even when expert testimony is otherwise admissible, it may be excluded under Rule 403 if its probative value is substantially outweighed by the danger of unfair prejudice. Fed. R. Evid. 403. The street value of illegal drugs, the distribution quantities, the modus operandi of drug traffickers and the structure of drug trafficking organizations are matters that are generally beyond the common knowledge of the average lay person. United States v. Valle, 72 F.3d 210, 215 (1st Cir. 1995). Thus, expert testimony in the form of an opinion regarding these subjects is likely to assist a jury in evaluating the evidence in the case. Id. Whether such expert testimony will be admissible depends on the nature of the expert testimony. The Ninth Circuit has drawn a distinction between expert testimony involving the structure of drug trafficking organizations and drug courier profiles on the one hand, and expert testimony involving the modus operandi of drug traffickers or "unknowing courier," on the other.

With respect to expert testimony concerning the structure of drug trafficking organizations, the Ninth Circuit has held that such expert testimony is generally not relevant or admissible, except (1)

when the defendant is charged with a conspiracy; or (2) when such evidence is otherwise probative of a matter properly before the trial court. See, e.g., United States v. Pineda-Torres, 287 F.3d 860, 863 (9th Cir. 2002); United States v. Vallejo, 237 F.3d 1008 (9th Cir. 2001) amended, 246 F.3d 1150 (9th Cir. 2001) (holding that expert testimony regarding structure of drug trafficking organizations was not relevant and was prejudicial where the defendant was not charged with a conspiracy to import and there was no evidence of defendant's connection to a drug trafficking organization).[1]  With regard to expert testimony about drug courier profiles, the Ninth Circuit has held that is inherently prejudicial and, thus, generally not admissible. See United States v. Cordoba, 104 F.3d 225, 229-30 (9th Cir. 1997).

In contrast, "unknowing courier" expert testimony is admissible, even if a defendant's case is not complex or does not involve a conspiracy charge, as long as the "unknowing courier" expert testimony is relevant. Thus, in Murillo, where the defendant, who had been convicted for possessing the intent to distribute cocaine, challenged on relevancy grounds the admission of "unknowing courier" expert testimony during his trial. The court, in affirming the admission of the expert testimony, held that the "unknowing courier" testimony was relevant because it went to the heart of the defense that he did not know he was transporting drugs. Murillo, 255 F.3d at 1177. Similarly, in Cordoba, the defendant, who was convicted in a non-conspiracy case of possession with intent to distribute cocaine, challenged on appeal the admission of "unknowing courier" expert testimony. Cordoba, 104 F.3d at 227, 229. In affirming the admission of such testimony, the Ninth Circuit held that "unknowing courier" expert testimony that drug traffickers do not entrust valuable cocaine to unknowing transporters was clearly probative of the defendant's knowledge that he possessed drugs and that the testimony's probative value outweighed any prejudicial effect. Id. at 229. See also United States v. Castro, 972 F.2d 1107 (9th Cir. 1992) (holding that the jury could have reasonably found that the defendant knew he possessed cocaine where "experts testified that the amount of cocaine, valued in the millions of dollars, would have never been entrusted to an unknowing dupe").

---

[1]  Notably, footnote three of the amended Vallejo opinion makes clear that, "[t]his case does *not* involve the United States's use of 'unknowing courier' testimony, in which a law enforcement official testifies that certain drug traffickers do not entrust large quantities of drugs to unknowing transporters. Therefore, we do *not* address the admissibility of such testimony." Id. (emphasis added). Thus, Vallejo is inapplicable in this case.

1    In the instant case, the nature of the proposed testimony is precisely the type of testimony found
2 to be relevant and admissible in Murillo and Cordoba. As in Murillo and Cordoba, Defendant was not
3 charged with conspiracy and the unknowing courier expert testimony will go to the heart of the
4 Defendant's expected defense that he did not know the marijuana was hidden in his vehicle and that it
5 must have been placed there by persons known or unknown to him.

6    Indeed, Murillo simply affirmed what had been, prior to Vallejo, a well-established rule in the
7 Ninth Circuit, as well as other circuits, that expert testimony regarding the *modus operandi* of a
8 particular business is admissible even in non-complex, non-conspiracy cases provided the testimony is
9 relevant and helpful to the jury in understanding a fact at issue. See United States v. Campos, 217 F.3d
10 707, 712, 719 (9th Cir. 2000) (affirming admission of expert testimony during United States's
11 case-in-chief regarding the value of marijuana seized and the structure of drug-smuggling organizations
12 in non-complex case in which conspiracy was not charged); Cordoba, 104 F. 3d at 229-30 (holding that
13 "expert testimony that drug traffickers do not use unknowing transporters was clearly probative of
14 Cordoba's knowledge that he possessed narcotics").

15    Evidence about the drug-trafficking business, as well as admission of evidence about the modus
16 operandi of drug couriers, is consistent with well-established law allowing expert testimony about a
17 criminal organization's operations as relevant to a defendant's knowledge. See Alonso, 48 F.3d at 1540
18 (holding that law-enforcement officers may testify regarding "typical methods and techniques employed
19 in an area of criminal activity," and explain how defendant's conduct conforms to typical methods)
20 (quotation omitted); Gil, 58 F.3d at 1421-22 (admitting expert testimony regarding general practice of
21 drug traffickers); United States v. Bosch, 951 F.2d 1546, 1549-50 (9th Cir. 1991) (holding that agent
22 with expertise in narcotics investigations may aid jury in understanding defendant's role in charged
23 offense); United States v. Jaramillo-Suarez, 950 F.2d 1378, 1384 (9th Cir. 1991) (holding that expert
24 properly testified regarding drug organization's use of pay-owe sheets to keep track of customers);
25 United States v. Guzman, 849 F.2d 447, 448 (9th Cir. 1988) (admitting expert agent's testimony that
26 switching cars is common tactic used by narcotics traffickers); United States v. Patterson, 819 F.2d
27 1495, 1507 (9th Cir. 1987) (permitting expert testimony that members of narcotics rings play many
28 different roles, including street salesmen, money collectors, and lookouts); United States v. Stewart, 770

F.2d 825, 831 (9th Cir. 1985) (allowing expert testimony that defendant engaged in counter-surveillance while driving on one occasion and was likely going to distribute drugs on another); United States v. Maher, 645 F.2d 780, 783 (9th Cir. 1981) (allowing expert testimony that a defendant's actions were consistent with the *modus operandi* of persons transporting drugs).

Given the case law above, this Court should allow expert testimony about the role and *modus operandi* of drug couriers. The United States does not intend to introduce drug courier evidence during its case-in-chief. However, the United States reserves the right to introduce expert testimony about the *modus operandi* of drug trafficking organizations, testimony about so-called blind mules, and drug courier profiles, if Defendant opens the door to any of those categories of evidence during opening statement, cross-examination, or Defendant's case-in-chief. See United States v. Beltran-Rios, 878 F.2d 1208, 1212-13 (9th Cir. 1989) (testimony about type of individual used as drug "mule" admissible where defense counsel opens door). This Court should admit this evidence for the foregoing reasons and to avoid the risk that the jury may not understand how Defendant's arguably innocuous acts comport with drug smuggling.

**5.   Expert Testimony that the Substance Seized is Marijuana**

Again, absent a stipulation by Defendant, the United States intends to call a Forensic Chemist from the DEA to testify that the substance seized from Defendant's vehicle is marijuana, a Schedule I controlled substance. The United States anticipates that the Forensic Chemist will testify that he performed various tests on the substance seized from Defendant's vehicle, and that these tests all indicated that the substance is in fact marijuana. This expert will base this opinion on his background, education and experience, along with his knowledge and use of accepted scientific methods of testing. This testimony bears directly on an element of the charged offense - that marijuana is a prohibited drug.

**G.   THE COURT SHOULD PRECLUDE DEFENDANT FROM OFFERING EXPERT TESTIMONY**

To date, Defendant has not provided notice that he intends to call any expert witnesses to testify at trial. Accordingly, Defendant should not be permitted to introduce any expert testimony at trial absent the requisite notice.

//

1  If the Court determines that Defendant may introduce expert testimony, the United States
2  requests a hearing to determine this expert's qualifications and relevance of the expert's testimony
3  pursuant to Federal Rule of Evidence 702 and Kumho Tire Co., 526 U.S. at 150.  See United States v.
4  Rincon, 11 F.3d 922 (9th Cir. 1993) (affirming the district court's decision to not admit the defendant's
5  proffered expert testimony because there had been no showing that the proposed testimony related to
6  an area that was recognized as a science or that the proposed testimony would assist the jury in
7  understanding the case); see also  United States v. Hankey, 203 F.3d 1160, 1167 (9th Cir.), cert. denied,
8  530 U.S. 1268 (2000).

9  **H.    THE COURT SHOULD ADMIT "404(B)" EVIDENCE**

10  The United States moves to admit Treasury Enforcement Communications ("TECS") data and
11  related testimony.  In an abundance of caution, the United States gave notice to Defendant pursuant to
12  Federal Rule of Evidence, 404(b), that TECS data and related testimony may be offered at trial.
13  Specifically, this evidence relates to Defendant's crossing history at the United States - Mexico border
14  as well as the crossing history of vehicles driven and/or registered to Defendant.  Additionally, the
15  United States moves to admit evidence that on or about November 30, 2007, Defendant made
16  application for admission to the United States from Mexico at the Calexico, California, West Port of
17  Entry, while driving a vehicle that contained a non-factory compartment.  The United States gave notice
18  to Defendant pursuant to Federal Rule of Evidence, 404(b).

19      **1.    TECS Data as "Other Acts" Evidence**

20  The Ninth Circuit has held that such data may, in certain circumstances, be "other acts" evidence
21  subject to the notice requirement of Federal Rule of Evidence 404(b).  United States v. Vega, 188 F.3d
22  1150 (9th Cir. 1999).  In an abundance of caution, the United States has provided notice to the
23  Defendant of its intent to use this data and will provide Defendant with a copy of any such data prior
24  to offering it as rebuttal evidence.  Notwithstanding this notice, the United States believes that certain
25  TECS data may be "inextricably intertwined" with evidence of the charged offenses and, accordingly,
26  Rule 404(b) does not apply.  United States v. Sanchez-Robles, 927 F.2d 1070, 1078 (9th Cir. 1991) (The
27  Ninth Circuit held that where acts evidenced by the TECS reports are "inextricably intertwined" with
28  the crime charged, the acts evidenced by the TECS reports are not "other acts" for the purposes of

Federal Rule of Evidence, 404(b), and are properly admissible). In any event, the Defendant is on notice of the United States' intent to use this evidence.

### 2. TECS Data is Admissible as Public Record

The Ninth Circuit has held that TECS data is admissible as a public record under Federal Rule of Evidence, 803(8). United States v. Orozco, 590 F.2d 789, 794 (9th Cir. 1979), cert. denied, 439 U.S. 1049 (1978) and 442 U.S. 920 (1979). The Court reasoned that:

> The relevant portion of rule 803(8) allows admission of public records "setting forth . . . matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel. . . ." In excluding "matters observed by . . . law enforcement personnel" from the coverage of the exception, Congress did not intend to exclude records of routine, nonadversarial matters such as [TECS records].

Id. at 793. As such, this evidence is properly admissible under the public records exception to the hearsay rules.

### 3. Non-factory Compartment as "404(b)" Evidence

Evidence of other crimes, wrongs, or acts is not admissible under Rule 404(b) to prove the character of the defendant in order to show action in conformity therewith. However, evidence of other crimes, wrongs, or acts is admissible under Rule 404(b) so long as its introduction is for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Rule 404(b) is "an inclusionary rule" under which evidence is inadmissible "only when it proves nothing but the defendant's criminal propensities." United States v. Diggs, 649 F.2d 731, 737 (9th Cir.), cert denied, 454 U.S. 970 (1981), overruled on other grounds, United States v. McConney, 728 F.2d 1195 (9th Cir.) (en banc), cert. denied, 469 U.S. 824 (1984). Evidence of other acts is admissible under Rule 404(b) if:

   (1)   the evidence tends to prove a material element of the offense charged;

   (2)   the prior act is not too remote in time;

   (3)   the evidence is sufficient to support a finding that the defendant committed the other act; and

   (4)   (where knowledge and intent are at issue) the act is similar to the offense charged.

United States v. Plancarte-Alvarez, 366 F.3d 1058, 1062 (9th Cir. 2004) (citing United States v. Mayans, 17 F.3d 1174, 1181 (9th Cir. 1994)); United States v. Arambula-Ruiz, 987 F.2d 599, 602 (9th Cir. 1993)

(evaluating admissibility under Rule 404(b) for materiality, similarity, sufficiency, and temporal proximity).

### a. Prior Act is Material to the Elements of the Offenses Charged

Here, Defendant was found driving a vehicle with a non-factory compartment at the Calexico West Port of Entry. The act of Defendant driving a vehicle configured to smuggle narcotics into the United States from Mexico is material to the issue of whether he knowingly and intentionally smuggled marijuana into the United States from Mexico and knowingly possessed marijuana with the intent to distribute. See United States v. Hodges, 770 F.2d 1475, 1479 (9th Cir. 1985) (other act evidence may be introduced if the Government establishes its relevance to an actual issue in the case). Further, the Ninth Circuit has upheld the admission of other act evidence to refute an "innocent dupe" defense. See United States v. Bibo-Rodriguez, 922 F.2d 1398, 1400 (9th Cir. 1991), (subsequent act of importing 30 pounds of marijuana was relevant to show defendant was not "duped" into initially smuggling cocaine into the United States), cert. denied, 501 U.S. 1234, 111 S.Ct. 2861 (1991).

### b. Prior Act is Not too Remote in Time

Here, the "other act" evidence is not too remote in time. The prior act and the instant offenses occur within almost two weeks of each other. There is no bright-line rule requiring the Court to exclude other act evidence after a certain period of time has elapsed. See United States v. Brown, 880 F.2d 1012, 1015 n. 3 (9th Cir. 1989). Proximity in time "is not a prerequisite having independent force." United States v. Ramirez-Jimenez, 967 F.2d 1321, 1326 (9th Cir. 1992). It should be considered in the context of all the relevant facts and circumstances in a given case. Id.; see also United States v. Johnson, 132 F.3d 1279, 1283 (9th Cir. 1997) (upholding admission of "other act" that occurred 13 years before charged crime); and United States v. Ross, 886 F.2d 264, 267 (9th Cir. 1989) (same). As such, Defendant's 2007 detention at the Calexico West Port of Entry for entering the United States from Mexico with a vehicle containing a non-factory compartment is sufficiently recent for the purposes of Rule 404(b).

### c. There is Sufficient Evidence of Prior Act

Here, the United States will present sufficient evidence of Defendant's 2007 detention at the Calexico West Port of Entry for entering the United States from Mexico with a vehicle containing a non-

1  factory compartment through the testimony of CBP Officer Michael Price. CBP Officer Price made
2  contact with Defendant in the secondary inspection area at the Calexico West Port of Entry and
3  conducted the inspection of Defendant's vehicle. Other act evidence under Rule 404(b) should be
4  admitted if "there is sufficient evidence to support a finding by the jury that the defendant committed
5  the similar act." Huddleston v. United States, 485 U.S. 681, 685 (1988). The testimony of a single
6  witness is sufficient to satisfy the low-threshold for purposes of Rule 404(b). See United States v.
7  Dhingra, 371 F.3d 557, 566-57 (9th Cir. 2004) (citing United States v. Hinton, 31 F.3d 817, 823 (9th
8  Cir. 1994)).

### d. Prior Act is Similar to Facts and Circumstances of Charged Offenses

10  Here, the facts and circumstances surrounding Defendant's 2007 detention at the Calexico West
11  Port of Entry for entering the United States from Mexico with a vehicle containing a non-factory
12  compartment are similar to those in the instant case. The most notable similarities include but are not
13  limited to: Defendant entered the United States from Mexico through the Calexico West Port of Entry;
14  Defendant claimed that he recently purchased the vehicle; and each vehicle was configured to smuggle
15  narcotics. While factual similarity between the "other act" and the instant offense is required for the
16  purpose of demonstrating a defendant's intent, it is not required to demonstrate knowledge provided that
17  the "other act" evidence makes "'the existence of [defendant's] knowledge more probable than it would
18  be without the evidence.' [citation omitted]." Arambula-Ruiz, 987 F.2d at 603. Most importantly,
19  "similarity, like proximity in time, is not a prerequisite having independent force, but rather a factor
20  pertinent to rational appraisal of the probative value of the evidence in relation to the purpose for which
21  it is being offered." Ramirez-Jimenez, 967 F.2d at 1326.

### e. Prior Act is Not Unfairly Prejudicial

23  Finally, Defendant's 2007 detention at the Calexico West Port of Entry for entering the United
24  States from Mexico with a vehicle containing a non-factory compartment is "not the sort of conduct
25  which would provoke a strong and unfairly prejudicial emotional response from the jury." Ramirez-
26  Jiminez, 967 F.2d at 1327. Further, any prejudice could be minimized by an appropriate limiting
27  instruction to the jury instructing them to consider the other acts as it relates to Defendant's knowledge,
28  intent, absence of mistake, and for no other purpose. See United States v. Montgomery, 150 F.3d 983,

1001 (9th Cir. 1998) (an appropriate limiting instruction is a factor weighing in favor of admission of Rule 404(b) evidence).

**I.     RECIPROCAL DISCOVERY**

To date, Defendant has produced no reciprocal discovery to include any photographs that Defendant intends to introduce at trial. The United States respectfully requests that Defendant comply with Rules 12.2 and 16(b) of the Federal Rules of Criminal Procedure, as well as Rule 26.2 which requires the production of prior statements of <u>all</u> witnesses, except for those of Defendant. Accordingly, the United States intends to object at trial and ask this Court to exclude any evidence at trial which has not been provided to the United States.

**IV**

**CONCLUSION**

For the above stated reasons, the United States respectfully requests that its Motions <u>in</u> <u>Limine</u> be granted.

DATED: May 20, 2008                    Respectfully Submitted,

KAREN P. HEWITT
United States Attorney

*/s/ Paul L. Starita*
PAUL L. STARITA
Assistant U.S. Attorney
Attorneys for Plaintiff
United States of America
Email: paul.starita@usdoj.gov